No. 13,735.

SUCCESSION OF ERNEST JACOBS.

SYLLABUS.

1. One cannot renounce the succession of an estate not yet devolved, nor can any stipulation be made with regard to such a succession, even with the consent of him whose succession is in question. The acceptance or rejection made by an heir before the succession is opened, is absolutely null, and can pro duce no effect. (C. C. 984-1887, 37th Annual, 236).
2. An estoppel cannot be invoked to impair the force and effect of a prohibitory law. (37th Annual, 236).
3. Where a testator, after making a particular legacy to a brother, leaves the "residue" of his property to his wife, and the donations are in excess of two-thirds of his property, the property which is the subject of the particular legacy is not to be reduced by the action of reduction of a forced heir, if the value of the *residuum* does not fall short of the legal reservation. (C. C. 1312).
4. Where a person who dies leaving no children, but leaving a brother and sisters, 'has made donations *inter vivos* or *mortis causa* of his property exceed-ing two-thirds, the mother is a forced heir to the extent not of one-fourth, but of one-third. (C. C. 1494, 35th Annual, 995).
5. Where a person, who, dying without descendants, has left a mother, has disposed of more than two-thirds of his property by donations *mortis causa*. the donations being of particular property in its entirety to a brother, and the residue to his wife, the effect of a judgment recognizing the mother as a forced heir for one-third is not to vacate *ipso facto* the title of the par-ticular legatee to the extent of the one undivided third as a conveyance by the testator to that extent of the property of another, and, therefore, null and void. (C. C. 2452).

A PPEAL from the First Judicial District, Parish of Caddo—*Land, J.*

*Wise & Herndon* for Executor, Appellee.

*Alexander & Wilkinson* for Mrs. P. L. Jacobs, praying to be recognized as a forced heir, Appellee.

*Holbert & Barret* for Mrs. Lillie A. Jacobs, residuary legatee, praying to be put in possession, Appellant.

STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. On November 30th, 1899, Ernest Jacobs executed his olographic will, which read as follows:

"Shreveport, La., Nov. 30, 1899.

"Being aware of the uncertainty of life, I make this my last will and testament.

"1st. I desire that all my just debts be paid in full at once.

"2nd. I give and bequeath to my beloved mother, Mrs. P. L. Jacobs, one-fourth of all the property of which I may die possessed, real and personal, money, rights and credits.

"3rd. I give and bequeath to my brother, Walter B. Jacobs, all my interests and stock in the Shreveport Belt Railway Company and City Railway Company, and in the Shreveport Compress and Warehouse Company and in the Grand Opera House.

"4th. Whereas, I am engaged to marry, and expect to marry, Miss Lillie A. Heald, the daughter of T. W. Heald, a resident of the city of New York, in the State of New York, on the 12th day of December, 1899. Now, in the event that we are married, the said Lillie A. Heald, becoming my wife, I give and bequeath to her all the remainder of the property of which I may die possessed, real and personal, money, rights and credits.

"5th. I appoint my brother, Walter B. Jacobs, executor of this my last will and testament, without bond.

"This is wholly written, dated and signed by me in my own handwriting, on this, the 30th day of November, 1899.

"ERNEST JACOBS."

He married the young lady referred to in the will shortly after its execution, and died on the 18th of January, 1900, leaving a mother, one brother and several sisters, a widow and no children, issue of his marriage, and considerable property, real and personal.

The will was probated on January 30th, 1900, and W. B. Jacobs, the brother, qualified as executor. An inventory was made of the property of the succession, showing the value of the whole estate to be $103,748.

On the 28th of May, the executor filed a tableau of debts, praying that he be authorized to pay the same. This account showed an indebtedness of $23,842, and it was homologated on the 14th of April, 1900, and the debts ordered paid. This was done, leaving $97,985 as the net estate.

On the 5th of May, 1900, Mrs. P. L. Jacobs, widow of Edward Jacobs, and mother of Ernest Jacobs, filed a petition, in which, after reciting her relationship to the deceased—that he had died—leaving an olographic will, which had been admitted to probate, and under which Walter B. Jacobs had been confirmed and qualified as testamentary

executor, she alleged that by the terms of said will, she had been bequeathed one-fourth of all the property of the deceased; that a special legacy of certain property had been bequeathed to W. B. Jacobs, and the remainder was left to Lillie A. Heald (Jacobs), the widow of the deceased.

That the deceased left no children, and that his only legal heirs consisted of herself (his mother) and his brother and four sisters. That all of the property of which he died possessed was his separate estate and property.

That, under the law, she was the forced heir of her son, and as such, was entitled to one-third of his entire estate. That to the extent of the difference between the amount stated in said will—one-fourth—and that to which she was entitled under the law—one-third, the said will was null and void or reducible to the disposable portion provided by law.

In view of the premises, she prayed for citation upon the executor and upon Mrs. Lillie A. Heald (Jacobs) (born Heald), widow of Ernest Jacobs, and residuary legatee under his last will and testament; that on the final hearing, she have judgment decreeing her to be entitled as a forced heir to one-third of the entire estate in succession of Ernest Jacobs, and for all further orders and decrees necessary in the premises, and for general relief.

Mrs. Lillie Jacobs answered this demand. After pleading the general issue she admitted that the petitioner was the mother of the deceased; that he had died testate leaving a will, under which she was willed one-fourth of his estate; that the deceased left no descendants but a mother and brother and sisters surviving him. She specially denied the right of Mrs. P. L. Jacobs to claim and recover one-third of the property left by the deceased. She averred that her interest or *legitime* in said estate was one-fourth and not one-third as claimed by her. That the disposable portion was three-fourths of said estate. That Mrs. P. L. Jacobs was a legatee under the will for one-fourth of said estate, which was all she was entitled to, under the law. That Mrs. P. L. Jacobs was estopped by her acts and conduct from changing the provisions of the said will.

That she had often said before and since the death of Ernest Jacobs, that she did not want any of his property and that she did not need it, and often expressed herself as being fully satisfied with the provisions of the will, leaving her one-fourth. That she notified the testator be-

fore the will was written that she did not want any of his property, and would not accept it, and on being informed by the testator that the law forced him to leave her the fourth of his estate, said and informed said testator that she did not care for or want any of his estate, or property. That the mother was very old and wealthy, and in no wise needed said property. That this and other acts and conduct of the mother largely influenced and caused the testator to leave a large legacy to his brother, W. B. Jacobs, which, doubtless, would not have been done, had she notified the testator at the time, she was heir to one-third of his estate and would claim it.

She specially pleaded that the mother was estopped and could not now be heard to claim more than what was given her by the will; she prayed that her demand be rejected.

The executor answered the demand of Mrs. P. L. Jacobs, pleading the general issue.

The widow of Ernest Jacobs instituted a suit, in which she alleged that she was his universal legatee, under his will. That Walter B. Jacobs had administered the estate as executor and had filed his final account as such and prayed to be discharged of his trust.

That Mrs. P. L. Jacobs, the mother of the deceased, who died without issue, and surviving him, was owner under the law of one-fourth of said estate, after paying the debts of the deceased, the one-fourth being her *legitime* in said estate. That the said Mrs. Jacobs was entitled to the possession of the said one-fourth of the said estate, and petitioner was entitled to the possession of the other three fourths of said estate, except a special legacy to W. B. Jacobs, being ———— fourths of certain stock mentioned in the will, his mother being owner of the other fourth.

That notwithstanding Mrs. P. L. Jacobs was owner under the law as forced heir of one-fourth of said estate, and also by the terms of the will, she had brought suit for a third of said estate, which suit was still pending and could not be possibly fully disposed of before late in the fall or early next spring.

That petitioner was entitled to go in possession of the disputed interest, being the difference between a fourth and a third of said estate, on giving bond according to law, in an amount to be fixed, pending a settlement of said law suit between petitioner and the said Mrs. P. L. Jacobs.

That she was in need of the revenues of her property, and that the same should be accordingly turned over to her to be managed by her as she thought best.

She prayed for citation upon the executor and Mrs. P. L. Jacobs (the mother of her husband) and for judgment in her favor putting her in possession of three-fourths of said estate and permitting her to give bond for the difference between one-fourth and one-third as claimed, in the suit of Mrs. P. L. Jacobs, to account for the same on a final termination of that suit, and for all other orders necessary, costs, and general relief.

Mrs. P. L. Jacobs answered this petition, pleading first, the general issue. She opposed and objected to the putting of said Mrs. L. A. Jacobs into possession, on the ground that there was now pending in court in this succession proceeding, a suit by respondent claiming her *legitime* of one-third of said estate, and asking a reduction of the amount left to petitioner under the will, from three-fourths to two-thirds, and that, until this proportion was fixed and determined by final judgment of court, the interest of petitioner could not be ascertained or delivered.

The executor answered the application, pleading first, the general issue. He then averred that there was pending in court, a suit brought by Mrs. P. L. Jacobs, to revoke the will of said Ernest Jacobs, in so far as it gave her one-fourth ($\frac{1}{4}$) of his estate, she claiming one-third ($\frac{1}{3}$) as her portion under the law, and until that suit was finally determined, he did not know how to divide the assets of said succession, or the interest of the said Mrs. Jacobs therein.

In view of the premises he prayed that the demand of plaintiff be rejected until the rights of all parties might be fully settled, and for all orders and decrees necessary, for costs and for general relief.

In the meantime the executor had filed his final account of administration, and asking that notice be given to parties, he prayed for his discharge.

In his petition accompanying the account he averred that there was error in the inventory, in this, that the shares of Parkview Land Company were appraised at $1600, and the money belonging to said company was also appraised at $2405. He reserved the right in his individual capacity to contest the ownership of Parkview Land Company, and the money on hand.

Mrs. Ernest Jacobs answered. She denied every allegation in the

executor's petition, made in reference to error in the inventory as to Parkview Land Company, and, also, his right to certain reservations as set forth therein.

She averred that the stock of the said company was appraised at its full value and that the money was earnings of the company which were still on hand undivided, also over which all rights and credits belonging to the said company should also be appraised, separately from stock. She prayed that the executor's demand be rejected.

The District Court rendered judgment on the petition of Mrs. P. L. Jacobs relative to her *legitime,* "ordering, adjudging and decreeing that Mrs. P. L. Jacobs be recognized as the forced heir of Ernest Jacobs, deceased, and as such entitled to the undivided third of his entire succession, after the payment of debts and costs and expenses of administration, and that the succession pay the costs of that particular proceeding."

In the matter of the application of the widow to be placed in possession of the estate of Ernest Jacobs, the court rendered judgment, "ordering, adjudging, and decreeing that Mrs. Lillie A. Jacobs be recognized as the residuary legatee of the succession of Ernest Jacobs, and as such entitled to the *residuum* of the property on hand, as shown by the final account of W. B. Jacobs, executor, less costs, after deducting therefrom the one undivided third interest of Mrs. P. L. Jacobs, as per her judgment rendered the same day and the particular legacy of W. B. Jacobs."

It further ordered, that the widow be put in possession of said residuary interest according to law, and that the succession pay the costs of that particular proceeding.

The widow, Mrs. L. A. Jacobs, appealed from the judgment in favor of the mother. She also appealed from the judgment rendered by the court in the matter of her own application.

No other appeals were taken and no prayers for amendments of judgments were filed.

## OPINION.

In the brief of counsel for Mrs. Ernest Jacobs, appellant, they say this case presents the following questions:

1st. Is the interest of Mrs. P. L. Jacobs as a forced heir a third or a fourth?

2nd. Is she not estopped by her acts and conduct from now claiming any more than the fourth given her by the will?

3rd. Can she attack the will without renouncing the legacy?

4th. Does not the interest of Mrs. P. L. Jacobs, whatever it may be, cover a part of the stock willed to W. B. Jacobs, and if so, who is to make up the deficiency, if at all?

The legislative branch of government in this State, has exercised its recognized power of controlling the disposition of the property left by parties at their death, by the enactment of general statutes of descent and distribution. It has also enacted laws modifying, itself, the general laws in particular cases or classes of cases, or authorizing the modification of the same under certain circumstances and on terms and conditions, and with certain resulting effects, by the exercise of the will of the owner of the property.

Thus it has divided succession (Art. C. C. 875) into testamentary, legal and irregular successions; declaring in Article 876 that testamentary successions were those which result from the institution of heir contained in a testament, and that this sort of successions were treated of under the title of donations *inter vivos* and *mortis causa;* in Article 877 that legal succession was that which the law had established in favor of the nearest relation of the deceased; and in Articles 880 and 888 that he who was the nearest relative to the deceased capable of inheriting, was presumed to be, and was called to be, legal heir.

Having dealt with the subject of successions generally, the Legislature took up the matter of successions in detail, providing for legal successions in the case of Successions falling to Descendants (Article 902 *et seq.*); Successions falling to Ascendants (Article 903 *et seq.*) and of the Succession of Collaterals (Article 911 *et seq.*); of Irregular Successions (Article 915 *et seq.*); of Testamentary Dispositions (Article 1570, *et seq.*; Article 1605, *et seq.*)

As affecting the subject matter it adopted the Articles of the Civil Code found in Article 1493 *et seq.* and Article 1502 *et seq.*

A comparison of these various provisions of the law will show that while the law-maker has provided by disposition of its own, of the property left by deceased parties, in the absence of testamentary dispositions, it has authorized parties under certain limitations and conditions to vary or control the legal provisions by the exercise of their will, brought to bear upon the subject matter. We find in Article 1496 "that where there are no legitimate descendants and in case of

the previous decease of the father and mother, donations *inter vivos* or *mortis causa* may be made of the whole amount of the property of the disposer, saving the reservations made thereafter".

This Article withdraws brothers and sisters of the deceased and the descendants of the latter and the wife of the deceased from falling under the term "forced heirs" found in Article 1495. It confines "forced heirship" to the descendants of a person and to their surviving father or mother, or both.

We find in Article 1502 of the Code the recognition by the law-maker of the general right of parties to dispose of their property by donations *inter vivos* and *mortis causa,* but coupled with the limitations and conditions affixed to the exercise of that right by Articles 1493 and 1494 of the Code.

The first of these Articles (Article 1493) declares "that donations *inter vivos* or *mortis causa* cannot exceed two-thirds of the property of the disposer, if he leaves at his decease a legitimate child; one-half if he leaves two children; and one-third if he leaves three or a greater number. Under the name of children are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent."

The second Article (Article 1494) declares that "donations *inter vivos* or *mortis causa* cannot exceed two-thirds of the property if the disposer, having no children, leave a father or mother, or both".

Article 1495 declares that "in the cases provided by the two last preceding Articles, the heirs are called 'forced heirs' because the donor cannot deprive them of their portion of the estate reserved for them by law, except in cases where he has a just cause to disinherit them".

Article 1502 declares "that any disposal of property, whether *inter vivos* or *mortis causa,* exceeding the *quantum* of which a person may legally dispose to the prejudice of the forced heirs, is not null but only reducible to that *"quantum"*.

Article 1504 declares "that the reduction of the donations whether *inter vivos* or *mortis causa* can be sued for only by forced heirs or by their heirs or assigns."

It is conceded in this case that Ernest Jacobs died leaving no children and leaving a mother, and that the donations *mortis causa* exceeded two-thirds of the property of the deceased. The facts of the case bring it directly under the terms of Article 1494 of the Code.

The mother of the deceased has called upon the courts, under Article

1502, as a forced heir, to have the provisions of Article 1494 enforced in her favor, and to have the donations made by the will reduced to the *quantum* allowed by law and to have herself recognized as a forced heir and to have the reduction enure to her benefit.

The court recognized the correctness of her demand and gave judgment in accordance with her prayer. The brothers and sisters of the deceased acquiesced in the judgment.

His widow, who by the terms of the will was constituted residuary legatee, alone complains.

She is not an heir at all in the succession, still less a forced heir, and is only entitled to insist upon recovering what her husband bequeathed to her and to the extent alone that he was legally authorized to bequeath the same to her. It is clear that so far as she is concerned that the bequest to her was subject to reduction, as being in excess of the *quantum* which the law authorized her husband to dispose of, he, having no children and leaving a mother.

If that be true, it is a matter of no legal concern to her as to whose benefit the reduction will enure. The mother, as a forced heir, had an unquestionable right to sue for the reduction. Article 1494 of the Code is clear and unambiguous. The Legislature had the legal right to say "that donations *inter vivos* or *mortis causa* should, in cases of testamentary succession, not exceed two-thirds of the property, if the disposer having no children, leave a father or mother."

We have no authority to refuse to obey the legislative will unless brought to bear upon matters beyond constitutional powers. Appellant contends, if we understand correctly, that there is no direct affirmative enactment of the law casting upon the mother a right of inheritance to the extent of one-third; that the only direct declaration as to her rights, when called as heir to a succession in a concurrence with brothers and sisters of a deceased person, is to declare her an heir to the extent of one-fourth. It may be true that there is no direct affirmative declaration to that effect, but that the mother does become a forced heir to the extent of one-third in a testamentary succession under Article 1494 clearly results from the terms of that Article and those of Articles 1495 and 1496.

The facts in the matter of the Succession of Marks, reported in 35 Ann. 998, were almost identical with those in the present case. The deceased, Marks, left no children, but did leave a mother, brothers and a surviving wife. The latter he constituted by his will his universal

legatee. The only difference between that case and the present is that while Jacobs left no children but did leave a mother, sisters and a surviving wife, he made a bequest of one-fourth of his property to his mother, and a bequest of certain stocks, specific, personal property to his brother, and constituted his wife his residuary legatee.

In the contest which arose in the Marks succession as to the character and extent of the mother's interest, she was adjudged to be a forced heir to the extent of one-third, the court overruling Cole vs. Cole (7 N. S. 414), and adopting the views of Mr. Justice Buchanan in Barbet vs. Roth (14 Ann. 381), to the effect that "there was a very simple and obvious way of reconciling Articles 899 and 900 (now Articles 903 and 904) with Article 1481 (now Article 1494) of the Code, which was to consider the first a statute of distribution of Intestate Succession—the second a statute of distribution in Successions Testamentary. One is an allotment made of a man's estate when he had not chosen to make any allotment himself. The other a restriction upon the disposing power of a man over his own property. The doctrine in the Cole case (7 N. S. 414) if adhered to would expunge Article 1481 (now Article 1494) from the Code. The doctrine (of that case) is substantially as follows:"

"Article 1491 (now Article 1494) is irreconcilable with Articles 899 and 900 (now Articles 903 and 904), therefore it must yield to those Articles and consequently the *legitime* of a father and mother of a descendant, who leaves a brother or brothers, is in no case more than one-fourth of the succession."

"Now besides the fundamental error in the premises, the want of incompatibility of the Article, the conclusion is erroneous even if the premises were correct, for it is a rule of interpretation that when two Articles of the Code cannot be reconciled, the last in order and highest in number, prevails. (Johnson vs. Pilister, 4 Rob. 71)."

Counsel urge upon us to overrule the decision in the Succession of Marks and return to the doctrine announced in Cole vs. Cole, which they say was followed for near a century, but we do not feel justified in doing so, not only because an uncertain and fluctuating jurisprudence is to be avoided, if possible, but because the conclusions reached in the Marks case were correct.

It is urged that these conclusions lead up to illogical and incongruous results. Granting that to be so, it is no part of the province of the judiciary to construe statutes which are perfectly unambiguous, in a

manner different from their terms, in order to bring them in connection, with others, into forming a perfectly rounded and logical and consistent system. We have to enforce the law, consistent or inconsistent, logical or illogical, so long as it is constitutional.

It is useless for us to discuss what might have been the rights of parties, had the terms of the will been different from what they are; in other words, discuss a case where the disposition made of his property by the deceased would have been identical with the disposition made by the law itself, in the case of intestacy. We have to take the facts and the will as we find them.

Appellant contends that the mother is estopped from claiming more than one-fourth of the estate, by reason of having declared to her son, prior to his making his will, that she did not expect or desire him to leave her any of his property, and by reason of her having made declarations to the same effect to her daughter-in-law, after the death of the latter's husband.

With respect to the latter declarations it is sufficient to say that they rest upon the testimony of the widow, which is flatly contradicted by that of the mother. The alleged declarations are not established. The mother's testimony is supported by the presumption *"nemo facile presumitur donare"*. He who rests a claim upon the renunciation by another of a right existing in his favor, is called upon to establish the renunciation by very clear and positive evidence.

We do not think it can be seriously urged that declarations such as appellant claims the mother to have made prior to her son's death and prior to his making a will in respect to the testamentary disposition of his property, could estop her from claiming the *legitime* accorded to her by the law.

What the mother said, even if legally proved, was not said under circumstances and conditions such as would have legally bound her. Article 984 of the Civil Code declares "that the acceptance or renunciation of a succession before the succession is opened or left, is absolutely null and void, and can produce no effect."

Not only is the absolute renunciation of a succession before a succession is opened, a nullity, but any contract or arrangement between the heir and the party from whom he is seeking to inherit to work a modification of the terms of his inheritance by anticipation, is without effect.

Article 1887 of the Civil Code declares that "one cannot renounce

the succession of an estate not yet devolved, nor can any stipulation be made with regard to such a succession, even with the consent of him whose succession is in question."

If the right of a party in a succession cannot be defeated by an express contract or stipulation made before the succession was opened, they cannot be by invoking the doctrine of estoppel. Estoppel cannot be set up to impair the force and effect of a prohibitory law. (Factors' and Traders' Insurance Company vs. New Harbor Protection Co., 37 Ann. 236.)

Appellant contends that the mother could not institute this action until she had renounced all benefits under the will; that this she did not do. The demand which she made was for one-third of the estate of her son as forced heir, under allegations showing the state of facts upon which the claim was based. She does not claim any other or greater right than her *legitime.*

It is true that she does not, in precise terms, ask that the bequest made to her in the will of one-fourth, should be set aside, but this is because she viewed the will as simply recognizing her rights in the succession to the extent mentioned. Her rights in the succession are not grounded upon the will, but upon her rights as *forced heir.* (Succession of Turnell, 32 Ann. 220.)

Appellant contends in general terms that if the mother's right to one-third be recognized and the bequests made in the will should be reduced, that the reduction should be made *pro rata* between herself and W. B. Jacobs, the particular legatee. She cites in support of this proposition Article 1511 of the Code, and the decision of this court in Theall vs. Theall, 11 La. 429.

The rights of the parties in this case are governed by Article 1512 and not by Article 1511 of the Code.

It is true that the testator does not declare in *ipsissimis verbis* that "the particular legacy made to the brother should be paid in preference to that made to the widow", but that intention and result follow forcedly from the nature and character of the latter bequest. The legacy to the brother and that to the widow are not each absolute legacies, standing *inter se* upon an equality, but the widow was constituted Ernest Jacobs' "residuary legatee". By the force of the will she was to take only after the other bequests had been satisfied.

The last contention is that the brother is called to contribute with her, notwithstanding the terms of the will, by force of the effect of the

law governing the reserve or *legitime* upon the particular legacy made
to the brother.

In respect to this contention, counsel say: "Does not the interest of
Mrs. P. L. Jacobs, whatever that interest may be—a third or fourth—
cover a part of the stocks willed to W. B. Jacobs; and if so, who is to
make up the deficiency, if any one?" If forced heirship is ownership
—and of this there can be no doubt—at the moment the testator ex-
pired, the interest of Mrs. P. L. Jacobs as *forced heir* attached to the
extent of her interest to each and every piece of property of the suc-
cession. Her ownership and *seizin* of the property resulted from op-
eration of law, and this could not be affected, increased or restricted by
any testamentary disposition of her son. If this be true, she took as
owner the interest the law gives her in the stocks willed to W. B. Ja-
cobs. Therefore, Jacobs' legacy was reduced by the law to three-
fourths, or to two-thirds of the stock willed to him. The question is
shall his legacy be reduced in proportion to the interest his mother as
*forced heir,* may have in said stock. The universal legatee contends
that his legacy should be so reduced as this legacy is a *special* legacy of
a *particular piece of property.* That Jacobs must suffer the loss, and
has no right to call on the universal legatee to make up the amount of
his legacy reduced by the forced heirship of his mother. That this
being "a case of reduction" she is free from contributing even *pro rata*
to the making up of this reduction to W. B. Jacobs.

Appellant's proposition is that a person having children or a father
or mother, cannot convey title to the entirety of any particular piece
of property by donation *inter vivos* or *mortis causa;* that he can only
convey title to an undivided third; an undivided half, or an undivided
two-thirds of any specific property, according as there may be forced
heirs entitled to a *legitime* of one-fourth, of one-third, of one-half, or
two-thirds in the estate, at the time of his death; that if he should
have conveyed more, he should be held to have conveyed (to the extent
of this third, fourth, or half) the property of another and the title to
that extent be *ipso facto* null. (C. C. 2452.)

It is error to suppose that when the owner of property who leaves
children, or a father or mother at his death, disposes of particular pro-
perty in its entirety by donation *inter vivos* or *mortis causa,* he dis-
poses to the extent of the *quantum* of *legitime* which the children or
father or mother may have in his succession of the property of an-
other; on the contrary, he disposes of the whole property as his own,

but his *donee* takes it, subject to the rights of the forced heirs to make good their *legitime,* in the order and in the manner fixed by the law to the extent it may be unsatisfied or trenched upon by the donations *inter vivos* or *mortis causa* of the father or son.

The dispositions made by the father or son are not null but only reducible. The amount coming to the forced heir from the succession may from the special facts of the particular case be very little, and that ascertainable as directed by Article 1505 of the Code and by examination of the entire situation of the succession, and the liquidation of the rights of the parties.

The successful reduction for a small amount of the dispositions of the ancestor or author would certainly not result to the failing or vacation *ipso facto* of the title of the *donee* by one-fourth, half or two-thirds (as the *quantum* of the forced heir might be) of the property donated, nor should the enforcement of the judgment of reduction be limited and confined to the special undivided third or fourth or two-thirds of that property.

The action of reduction if brought by one heir against another might give rise to an action of partition between the heirs, but this action of partition would not be the action between "joint owners", or joint owners of a specific, undivided interest.

Whatever might be found due by reason of the *legitime* would, it is true, be in right of ownership (for it is only in right of heirship that the *legitime* is claimed, and a right of "heirship" whether the heir occupies towards the deceased the special relationship which gives rise to a right of *legitime* or not, is a right of ownership as contra-distinguished from a creditor's right), but this right of heirship is not necessarily a right of joint ownership nor of joint ownership to the extent of one-fourth, one-half or two-thirds of specific property, nor of the succession as a whole. It is a qualified right of ownership—a right of ownership *sub-modo.* The heir takes the property subject to the legal acts of the ancestor and the legal rights of creditors.

Parties holding property by donations *inter vivos* or *mortis causa* from parties leaving forced heirs, own the property donated, but by a special tenure of imperfect ownership causing them to hold it subject to the enforcement of the rights of the forced heirs as a right inherent in it. (Succession of Canonge, 1 Ann. 211; Bank vs. David, 49 Ann. 142.)

While the judgment in the present case recognized the right of the

mother as a forced heir in the Succession of Ernest Jacobs, and brought the particular property covered by the legacy to W. B. Jacobs, if necessary, within the grasp of the judgment in its enforcement—the title of W. B. Jacobs to the particular property bequeathed to him was not reduced *ipso facto* to two undivided thirds as contended for by appellant.

The title remains in W. B. Jacobs in its entirety—subject to the enforcement by Mrs. P. L. Jacobs of her right of *legitime* according to law. (Succession of Turnell, 32 Ann. 1220.)

We are of the opinion that the District Court took a correct view of the manner of this enforcement and of the rights of the parties. The judgments appealed from are hereby affirmed.