(96 South. 29)

No. 25331.

AURIENNE et al. v. MT. OLIVET, Inc., et al.

(Dec. 29, 1922.  Rehearing Denied April 2, 1923.)

*(Syllabus by Editorial Staff.)*

**1. Descent and distribution ⚖➟72—Succession; renunciation of inheritance not reducible as a donation.**

Renunciation of inheritance, unlike a donation, is not subject to reduction at instance of forced heirs of the heir renouncing, in view of Civ. Code, art. 977, declaring that no one can be compelled to accept a succession.

**2. Descent and distribution ⚖➟72—Succession; renunciation by two heirs in favor of third held not a donation, reducible to disposable portion.**

An instrument whereby two heirs, in consideration of love and affection and kind treatment, renounced, relinquished, assigned, transferred, and set over all interest in succession to the only other heir, *held* a renunciation and not an acceptance and donation under Civ. Code, arts. 994, 1002, 1003, 1022.

**3. Descent and distribution ⚖➟72—Succession; only gratuitous "renunciation" in favor of less than all coheirs constitutes acceptance.**

Civ. Code, art. 1003, providing that renunciation, even if gratuitous, by heir in favor of one or more, coheirs is an acceptance, refers only to renunciation in favor of less than all the coheirs.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Renunciation.]

**4. Descent and distribution ⚖➟72—Succession; renunciation in consideration of love and affection for coheirs is not acceptance; "price."**

Love and affection or gratitude is not considered a "price," within Civ. Code, art. 1003, providing that renunciation for a price is acceptance of inheritance, though made in favor of all coheirs indiscriminately.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Price.]

**5. Descent and distribution ⚖➟72—Succession; heir may renounce succession before it is opened by judicial proceedings.**

Under Civ. Code, arts. 978, 979, 984, 1887, heir may renounce succession after ancestor's death, but before succession is formally opened by judicial mortuary proceedings.

**6. Estoppel ⚖➟3(2)—Petition to be put into possession held not to estop heir to deny that instrument executed by coheirs was a donation.**

Petition by heir to be sent into possession, alleging that she had acquired interests of her brothers by conveyance, did not estop her to deny in suit by brother's forced heirs that the instrument executed by the brothers was a donation, and subject to reduction, rather than a renunciation.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Suit by J. C. Aurienne and others against Mt. Olivet, Incorporated, and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

Paul W. Maloney, of New Orleans, for appellants.

J. F. Pierson, Chas. I. Denechaud, and Dart, Kernan & Dart, all of New Orleans, for appellees.

O'NIELL, J.  The question presented in this case is whether a certain instrument, purporting to be a renunciation of an inheritance, is, in reality, an act of donation. The plaintiffs are the sons and daughters, forced heirs, of Peter Aurienne, deceased. The prayer of the petition is for a reduction of the so-called donation, to what is alleged to

have been the disposable portion of the estate. The suit was dismissed on an exception of no cause of action; and the plaintiffs have appealed.

We reproduce the document in question, which was produced by the plaintiffs in response to a prayer for oyer, viz.:

*No. 250.*                     June 14, 1902.
Renunciation of Rights in the Succession of Adele Aurianne by Edward and Peter Aurianne in Favor of Their Sister, Marie Aurianne.

State of Louisiana, Parish of Orleans, City of New Orleans.

Be it known that, on the fourteenth day of June, in the year one thousand nine hundred and two, before me, William B. Barnett, a notary public, in and for the city and parish of Orleans, state of Louisiana, aforesaid, duly commissioned and qualified, and in the presence of the witnesses hereinafter named and undersigned, personally appeared Edward Aurianne and Peter Aurianne, both residents of this city, who severally declared that, for and in consideration of the love and affection and kind treatment they bear towards their sister, Miss Marie Aurianne, and relative to the same, that they hereby renounce, relinquish, assign, transfer and set over in favor of their sister, Miss Marie Aurianne,

All the right, title, claim, interest and ownership whatsoever, in and to the succession of their late sister, Adele Aurianne, deceased;

Intending and understanding that our sister, Marie Aurianne, shall have full authority, right and power to dispose of our rights, titles and interest in and to the above and herein described succession, as she, the said Marie Aurianne, may think proper.

For the notification of these presents, to whom it may concern, full power and authority is hereby given unto our said sister, Marie Aurianne, bearer of this, hereby consenting that this present renunciation shall have its full force and effect.

To have and to hold our said rights, title and interest in and to the above herein described and named succession unto our said sister, Marie Aurianne, her heirs and assigns, forever.

And the said Marie Aurianne, also a resident of this city, being present, hereby acknowledges due delivery and possession of the above and herein named succession.

Thus done and passed in the city of New Orleans, in the presence of Jean Moulou and John P. Montamat, competent witnesses, residing in this city, who hereunto sign their names, with said appearers and me, notary, on the day and date set forth in the caption hereof.

It is admitted in plaintiffs' petition that Edward, Peter and Marie Aurienne (or Aurianne, as the name is spelled in the instrument) were the only heirs at law of their deceased sister, Adele Aurienne. The effect, therefore, of the renunciation—if it was a renunciation—was to make Marie Aurienne the sole heir of her sister.

[1] It is virtually conceded by the learned counsel for appellant—in fact it must be conceded—that the petition in this case does not disclose a cause of action if the instrument in question was a renunciation, not a donation. Plaintiffs do not claim that they have the right, which is given by article 1021 of the Civil Code to creditors of a person who has renounced an inheritance, to accept it to the extent of their claims; and we express no opinion as to whether plaintiffs, as forced heirs, ever had any such right. By the prayer of their petition, they affirm the act of their father, except in so far as it may have disposed of their alleged légitime. It is sufficient to say that a renunciation of an inheritance, unlike a donation, is not subject to reduction at the instance of the forced heirs of the heir who has renounced. The Civil Code (article 977) declares that no one can be compelled to accept a succession, whether acquired by testament or by operation of law.

[2, 3] The doubt as to whether the instrument in question was intended to be a renunciation or a donation arises only from the redundancy in the instrument—which, by the way, seems to be a characteristic of notarial acts—in containing after the word "renounce," the words "relinquish, assign, transfer and set over." In its caption, the instrument is styled a "renunciation"; and that is what we believe, quite firmly, it was intended to be. No reason could be given for

supposing that the two heirs who made the renunciation intended to accept the succession and thereby to make themselves liable for the obligations of the deceased, without any compensating advantage whatever to themselves. Aside from the presumption which we refer to, the case comes clearly within the rules established by the Civil Code. Article 1002 declares that a donation or sale or assignment made by an heir, of his right of inheritance, whether made to a stranger or to a coheir, or to coheirs, is to be considered an acceptance of the inheritance, on the part of the donor, seller, or assignor. And article 1003 declares that the same may be said of a renunciation—meaning, of course, that a pretended renunciation may also be said to be an acceptance on the part of the heir who pretends to renounce—if the so-styled renunciation be made in favor of one or more of the coheirs, even though it be made gratuitously, or if it be made for a price or consideration, even though it be made to all of the coheirs indiscriminately. The reason for those provisions of the Code is that the law itself has said what shall become of an inheritance which an heir has renounced. Article 1022 declares that it shall go to the coheirs of the same degree, or, if there be none, to those next in rank. And article 994 declares that, if an heir exercises any act of ownership of an inheritance, which he has no right to exercise except in his capacity of heir, he is supposed to have accepted the inheritance, and thereby to have acknowledged himself an heir of the deceased. Carrying out those general provisions of the law, and making them more specific, article 1003 merely forbids an heir to divert the established destiny of an inheritance which he renounces. If the heir exercises his right to say what disposition shall be made of his inheritance—which right can be exercised only in his capacity as an heir—he thereby accepts the inheritance and declares himself an heir; or, if he sells his inheritance to his coheirs indiscriminately, and receives from them a price in lieu of his inheritance—which, of course, he cannot do except in his capacity as an heir—he thereby accepts the inheritance and declares himself an heir. The first clause in article 1003, mentioning a gratuitous renunciation made by an heir "in favor of one or more of his coheirs," means, of course, in favor of any number less than all of the coheirs, because the next clause in the same article makes provision for a renunciation made "in favor of all his coheirs indistinctly" (meaning indiscriminately, the French word, in the Code of 1825, being indistinctement). Articles 1002 and 1003 were translated literally from article 780 of the Code Napoleon, viz.:

"Art. 1002. The donation, sale or assignment, which one of the coheirs makes of rights of inheritance, either to a stranger or to his coheirs, is considered to be, on his part, an acceptance of the inheritance."

"Art. 1003. The same may be said, 1st, of the renunciation, even if gratuitous, which is made by one of the heirs in favor of one or more of his coheirs; and, 2d, of the renunciation which he makes in favor of all his coheirs indistinctly, when he receives the price of this renunciation."

[4] The French writers saw no doubt about the meaning of article 780 of their Code. Laurent, vol. 9, p. 375, says that, if a renunciation be made in favor of all of the coheirs of the heir renouncing, the naming of the beneficiaries in the act of renunciation does not make the act an acceptance and donation of the inheritance; because, in such case, the heir who renounces merely declares the effect to be what the law itself declares it shall be. And the author adds: "Such is the unanimous opinion of the authors, ancient and modern." Baudry-Lancantinerie, vol. 2, p. 103, says that, when an heir renounces the inheritance in favor of all his coheirs, he may name them in the act of renunciation, without thereby making his renunciation an ac-

ceptance and donation of the inheritance, because, by naming the beneficiaries of the renunciation, the heir who renounces merely declares that his renunciation shall have the effect which the law itself gives it. And the author says that that is true, "even if the act of renunciation be declared to be dictated by an intention of good will towards the person called to benefit by the renunciation." That statement is pertinent to the argument of the learned counsel for appellants, that the act now under consideration was a donation because it was declared to have been made "for and in consideration of the love and affection and kind treatment" which the renouncers bore towards their sister, the beneficiary of the renunciation. · The reason why such a consideration does not, of itself, make the so-called renunciation a donation is that such a consideration is not regarded as a price; and article 1003, in terms, declares that it is only "when he receives the price of this renunciation," that an heir's renunciation in favor of all of his coheirs shall be "considered to be, on his part, an acceptance of the inheritance." In other words, a renunciation made in consideration only of love and affection for the beneficiary or beneficiaries, or as a matter of gratitude, is not to be considered as made for a price, or for value received.

The controlling feature of this case is that the renunciation was made in favor of the only remaining coheir. If there had been other coheirs, or one other coheir, not named as a beneficiary of the renunciation, the renunciation would not have been made to all of the coheirs indiscriminately, and, therefore, according to the precise language of article 1003 of the Code, the so-called renunciation would have been an acceptance of the succession and, in turn, a donation of it.

[5] It is argued on behalf of appellants that their father could not make a valid renunciation at the time when he signed the act in question, because the succession of Adele Aurienne, although she was dead, had not been formally opened by any judicial mortuary proceedings. The learned counsel for appellants cites and relies upon articles 978, 979, 984 and 1887 of the Civil Code, and the ruling in Succession of Jacobs, 104 La. 447, 29 South. 241. The ruling in the case cited was that the mother of the deceased Jacobs could not have renounced during his lifetime her right of inheritance as his forced heir. The articles of the Code, referred to, declare merely that a person cannot accept or renounce the succession of a living person. Article 978 says that, for an heir to be able to accept a succession, it is necessary that the succession should be open by the death of the person who is to be succeeded. Article 979 repeats that a person cannot accept a succession before it has fallen to him. Article 984 says that an acceptance or rejection made by an heir, before the succession is opened or left, is absolutely null and can produce no effect, but that it does not prevent the heir who has thus accepted from accepting or rejecting validly when his right so to do is complete. In the expression, "opened or left," the words "opened" and "left" are synonymous. That is made certain by reference to article 934, which declares that a succession, whether testamentary or legal, or irregular, becomes "open" by death, or by the presumption of death in the cases in which long absence establishes such presumption. Article 1887, under the title of Conventional Obligations, declares "future things may be the object of an obligation," and immediately makes the exception, "one cannot, however, renounce the succession of an estate not yet devolved, nor can any stipulation be made with regard to such a succession, even with the consent of him whose succession is in question." We are not aware of any authority, either in the Code or in the jurisprudence, for the statement that an heir cannot renounce an inheritance until the succession has been opened by a judicial proceeding.

[6] In a supplemental petition, the plaintiffs

in this suit pleaded an estoppel against the position taken by Miss Marie Aurienne, that the instrument in question was not a donation but a renunciation. The plea is founded upon the averment that, in July, 1906, Miss Marie Aurienne, in a petition to be sent into possession of the estate of her mother and father and of her sister, in response to which petition she was sent into possession of the estates, averred that she had acquired the interests of her brothers, Peter and Edward Aurienne, in their sister's estate, by an act of conveyance dated June 14, 1902, referring to the act now in question. There is no merit in the plea of estoppel. The averment that the act now in question was an act of conveyance was merely the interpretation of the attorney for Miss Marie Aurienne, in a proceeding in which its effect was a matter of no importance. It is quite certain that she or her attorney, at that late date, had neither the intention nor the authority to state what legal effect the so-called act of renunciation had produced. Surely, her declaration could not put the late Peter Aurienne in the position of having accepted the succession of his sister, Adele. Besides, the plaintiffs in this case were not affected in any way by the declaration of Miss Marie Aurienne, that she had acquired by conveyance, instead of by renunciation, the interest of Peter and Edward Aurienne in the succession of their deceased sister.

The judgment appealed from is affirmed.