McCALEB, Justice.
 

 Plaintiffs, four of the five children of the late Ansema Jean, a daughter of Cora-lie Lewis, instituted this suit to be recognized as forced heirs of their maternal grandmother and for reduction to the disposable portion of the legacy of the defendant, Antoine (or Anthony) Jean, presently the sole legatee under the last will of Coralie Lewis.
 

 The testatrix, Coralie (Cora) Lewis, and Paul Jean were married in 1900, and Antoine Jean is the only child born of that marriage. Prior to the marriage, Coralie Lewis and Paul Jean lived together and
 
 *319
 
 had five children, Ansema Jean, Polite Jean, Rosamond Jean, Alexis (Alexandre) Jean and Coralie Jean.
 

 Paul Jean died in 1930 leaving a parcel of real estate acquired during his marriage. Two of his children, Polite and Rosamond Jean, had predeceased him, hut they left children of their own. In 1937 Paul Jean’s widow, his children and the grandchildren, who represented the deceased children, opened his succession by joint petition to be recognized as surviving spouse and heirs, declaring that all of Paul Jean’s children were issue of his marriage with Coralie (Cora) Lewis. Since there was no contest on the point of legitimacy, judgment was rendered in accordance with the petition.
 

 Coralie Lewis died testate in 1949, bequeathing to Antoine Jean, Alexis Jean and Coralie Jean all of her interest in the real estate which had been acquired during her marriage with Paul Jean. Following the opening of the succession, Antoine Jean sued to reform the will and be recognized as the sole legitimate child and heir of Coralie Lewis, on the ground that Alexis and Coralie Jean were illegitimate, being natural children of Coralie Lewis, born out of wedlock. Coralie Jean did not contest Antoine Jean’s demand, stating in a letter that she found his petition meritorious. However, Alexis Jean filed an answer to the suit, denying the claim that he was not an heir and praying that the demand be rejected.
 

 After a hearing in 1950, judgment was rendered in favor of Antoine Jean, recognizing him as universal legatee and sole heir at law of Coralie Lewis and sending him into possession of her estate. At the time of the opening of this succession, all of the plaintiffs in the instant case were minors, and they were neither cited nor represented in tire proceedings. Hence, they are not precluded by the adjudication from bringing this suit to be recognized as forced heirs in the estate of their grandmother.
 

 Plaintiffs urge two grounds for the relief sought. The first is that the defendant is estopped to deny the legitimacy of their mother, Ansema Jean, because he signed the affidavit to the petition for the opening of his father’s succession which stated that all of Paul Jean’s children were the issue of his marriage with Coralie Lewis. Alternatively, they contend that Ansema Jean, even though born prior to the marriage of her father and mother, was legitimated by Article 198 of the Civil Code, as amended by Act 50 of 1944.
 

 The defendant resists these claims. He denies the legitimacy of Ansema Jean and pleads that he is in no way estopped from contesting it in these proceedings.
 

 After a trial on the merits, the district court overruled the plea of estoppel but held that plaintiffs’ mother was legitimated
 
 *321
 
 by Act 50 of 1944, in view of the marriage of her parents in 1900. Each plaintiff was then given J^th of
 
 i/ith of fórds of
 
 the property as forced heirs of Coralie Lewis.
 
 [1]
 
 Defendant then appealed to the Court of-Appeal, First Circuit, where the judgment of the district court was affirmed. See Henry v. Jean, La.App., 112 So.2d 171. This Court granted certiorari.
 

 The Court of Appeal, in affirming the decision of the trial court, found it unnecessary to consider plaintiffs’ plea of estoppel as it, like the district judge, was of the opinion that Act 50 of 1944 legitimated plaintiffs’ mother, Ansema Jean. We think this conclusion correct for the reasons hereinafter set forth.
 

 Paul Jean and Coralie Lewis admittedly were legally married in 1900 and the children who were born prior to the marriage, according to the undisputed evidence, were reared as the children of the marriage, being held out to the public as such both before and during marriage and after its dissolution by the death of Paul Jean
 
 in
 
 1930. Nevertheless, from the date of her birth until the effective date of Act 50 of 1944, Ansema Jean and the other children born prior to the marriage were illegitimate children because they had not been acknowledged either before the marriage by an act passed before a Notary and two witnesses or by the marriage contract itself, which was required by Article 198 of the Civil Code, as originally written in the Code of 1870.
 
 [2]
 

 But Act 50 of 1944 amended Article 198
 
 so as to
 
 change the conditions under which legitimacy is now to be determined. It read:
 

 “Children born out of marriage, except
 
 those who
 
 are born of an incestuous or adulterous
 
 [3]
 
 connection are legitimated by the subsequent marriage
 
 *323
 
 of their father and mother, whenever the latter have formally or informally acknowledged them for their children, either before or after the marriage.”
 

 Counsel for defendant contends that the amendatory act did not affect the status of plaintiffs’ mother and is inapplicable to the case. His position is that the act, by providing a new status respecting the legitimacy of persons born out of wedlock, created a substantive rather than a remedial right and, therefore, cannot operate retrospectively, but only for the future, as provided by Article 8 of the Civil Code. From this premise, it is asserted that the law cannot be applied to past events and must be regarded only as affecting the status of those children whose parents marry after its effective date.
 

 While we fully agree with counsel that the statute creates substantive rights and hence can have no retrospective effect,
 
 [4]
 
 we do not find merit in his conclusion that the law is given retroactive operation when it is applied to antecedent facts. The legislative intention to change the'status of persons born out of wedlock, from illegitimate to legitimate in instances when their father and mother have subsequently married and they have been informally acknowledged by their parents, either before or after the marriage, is clearly expressed in Act 50 of 1944. The persons, who come within the terms of the statute, “are legitimated”, as stated therein, when the legislation became effective and not before. However, the law affected all persons within the described status whether their parents married and they were acknowledged informally, either before or after its effective date and the legislation cannot be classed as retroactive simply because it draws upon these antecedent facts for its operation.
 

 This is a familiar principle of law, recognized and applied by the Supreme Court of the United States (Cox v. Hart, 260 U.S. 427, 43 S.Ct. 154, 67 L.Ed. 332 and Reynolds v. United States, 292 U.S. 443, 54 S. Ct. 800, 78 L.Ed. 1353), which has been followed by this Court on more than one occasion. See Hurry v. Hurry, 141 La. 954, 76 So. 160, where the Court construed Act 269 of 1916, creating a new right and cause of action for divorce when married persons have lived separately and apart for seven years (now two years) or more, and held that it was not necessary that the seven years separation should commence after the statute went into effect in order to avoid giving the law a retroactive effect. And see State v. Alden Mills, 202 La. 416, 12 So.2d 204, citing the foregoing
 
 *325
 
 cases with approval and applying the same principle of law.
 

 Of course, if the statute under consideration undertook to take away or impair vested rights acquired under existing laws, created a new obligation or imposed a new duty or disability with respect to transactions or considerations already passed, it would have to be classified as retrospective or retroactive in its operation. Brown v. Indemnity Insurance Co. of No. America, La.App., 108 So.2d 812, citing 82 C.J.S. Statutes § 412, p. 980 and 50 Am.Jur. 505, Statutes, Sec. 482. But the legitimations resulting from the enactment of the statute have not accorded to the persons legitimated any rights in the successions of persons who died before the passage of the Act, their right of inheritance being governed by their legal status at the instant of death, at which time the right of inheritance vests. Articles 940, 942, 944, Civil Code.
 

 Moreover, the law did not take away or impair any vested rights in other persons. Nor did it do any other thing which would make it retroactive or retrospective. Defendant had no vested rights in the succession of his mother until she died in 1949 (Aurienne v. Mt. Olivet Inc., 153 La. 451, 96 So. 29; Succession of Brown, 214 La. 377, 37 So.2d 842) and hence, legitimation of his brothers and sisters by Act 50 of 1944 could take nothing from him.
 
 [5]
 
 Accordingly, the Act, albeit substantive, was not retroactive or retrospective and it operated to allow all of the children of Coralie Lewis to share in her estate when she died in 1949.
 

 Counsel for defendant further contends that the judgment herein for plaintiffs is illogical and, for demonstration purposes, he points out that, had defendant urged the illegitimacy of his brothers and sisters in his father’s succession, they would have inherited nothing.
 

 There is no substance in counsel’s claim and we find nothing illogical in what he pictures as an inconsistency. The circumstance that defendant’s brothers and sisters were regarded as illegitimate under the law in force at the time of the father’s death constituted no bar to the Legislature’s right to change their status so long as no vested rights were divested. The Legislature is empowered to set out the standards of legitimacy and forced heir-ship and can modify those standards as it desires provided it does not violate any constitutional provision in so doing. Sue-
 
 *327
 
 cession of Earhart, 220 La. 817, 57 So.2d 695.
 

 Finally, defendant claims that the judgment in his favor against Alexis and Cora-lie Jean in the suit to reform the will of his mother vested in him the legitimate portion of that brother and sister and that, therefore, the lower courts erred in considering their forced portions in calculating the legitimate portion to which plaintiffs are entitled. This argument seems to be predicated on the idea that the judgments for defendant in that litigation resulted from a renunciation in his favor by Alexis and Coralie Jean.
 

 The short answer to this proposition is that the actions of Coralie and Alexis Jean cannot be viewed as renunciations of their mother’s succession. When defendant sought to have his mother’s will reformed so as to exclude Coralie and Alexis Jean as co-legatees, the former wrote a letter to the district court declaring that she did not contest the suit as she regarded the claim of defendant herein (which was based on her alleged illegitimacy) as meritorious and the latter filed an answer to the suit denying the allegation that he was not a lawful heir. Obviously, the answer of Alexis Jean denying defendant’s claim cannot be considered as a renunciation of his mother’s succession. And Coralie’s refusal to contest defendant’s suit because she thought his claim to be meritorious can only be viewed as an admission of defendant’s charges; it does not warrant a finding that she intended to renounce in his favor the legacy bequeathed her.
 

 The judgments of the district court and Court of Appeal are affirmed.
 

 [1]
 

 . Only four of Ansema Jean’s five children were plaintiffs because the other one had sold his interest in Coralie Lewis’ estate to defendant. The plaintiffs’ mother was one of the six children of Coralie Lewis, and plaintiffs were suing for the portion reserved by law to Ansema Jean, which was J4th of %rds of decedent’s property in this case because two (Alexis and Coralie Jean) of the six children had lost their rights as forced heirs by final judgment in the first contest over this succession.
 

 [2]
 

 . This Article, prior to its amendment in 1944, read as follows: “Children born out of marriage, except those who are born from an incestuous or adulterous connection, may be legitimated by the subsequent marriage of their father and mother, whenever the latter have legally acknowledged them for their children, either before their marrage by an act passed before a notary and two witnesses, or by their contract of marriage itself.”
 

 [3]
 

 .By Act 482 of 1948, Article 198 of the Civil Code was further amended by striking from the exception contained therein children born from an adulterous connection, so that now the subsequent marriage of the parents and formal or informal acknowledgment of the child or children, either before or after the marriage, has the effect of legitimating all children other than those born of an incestuous connection.
 

 [4]
 

 . The district judge erroneously regarded the legislation as remedial and the opinion of the Court of Appeal does not clearly show that it viewed the legislation as substantive.
 

 [5]
 

 . The fact that plaintiffs’ mother died in 1937 does not impair their claim that she was legitimated by the change effected by Act 50 of 1944 in view of the provisions of Article 201 of the Civil Code dedaring “Legitimation may even be extended to deceased children who have left issue, and in that case it inures to the benefit of such issue.”