GUIDRY, Judge.
This appeal questions the testamentary disinherison of a son by his father. The decedent, Joseph Manson Vincent, died testate on April 11, 1986, in Lake Charles, Louisiana. He was survived by his spouse, Viola Mae Vincent, and two children, Paul Roy Vincent and Beverly Ann Vincent Romero.
The decedent’s last will, made pursuant to the provisions of La.R.S. 9:2442, is dated April 17, 1984, and contains the following, among other, provisions:
“I specifically disinherit my son, Paul Roy Vincent, under the authority of Civil Code Article 1621 due to the incident in the spring of 1978, in which my son struck me three (3) times and fired at me with a .22 caliber automatic rifle and as a result, an offense report was filed with the Cameron Parish Sheriffs Department with Deputy Dewey Hebert and witnessed by Mr. William Poole, who saved my life.”
On August 1, 1986, the decedent’s will was admitted to probate. Thereafter, Viola Vincent and Beverly Ann Romero, universal legatees of the decedent, petitioned the court for possession and, in addition, sought judicial recognition of the disinheri-son of Paul Roy Vincent. Paul Roy Vincent, answered denying the allegations of the petition for possession. A contradictory hearing was held following which the trial court, for oral reasons assigned, rendered judgment recognizing the decedent’s disinherison of his son, Paul Roy Vincent, to be valid and in accordance with La.C.C. art. 1621. This judgment also placed Viola Mae Vincent and Beverly Ann Romero in possession of the estate of Joseph Manson Vincent in the proportions of one-half to each. Paul Roy Vincent appealed.
Mrs. Vincent, Mrs. Romero, William Poole, and Paul Roy Vincent testified at the hearing.
Mrs. Vincent stated that she did not know about the disinherison of Paul until after the making of the will. She was present at the lawyer’s office on April 17, 1984, when her husband made his will, and was then made aware of the incident alleged to have occurred in 1978. Mrs. Vincent admitted that the deceased and her son argued quite often and did not get along with one another and agreed that their arguments were loud and violent.
Mrs. Romero’s testimony was basically the same as her mother’s, reiterating the bad relationship that existed between the deceased and his son.
Poole testified that he and the decedent were at the latter’s camp working on the property when the 1978 incident took place. At that time, Paul Vincent was working at Consolidated Aluminum and living with his wife and two young children at the camp which the decedent owned. On the day in question, Paul had come off of the graveyard shift, gone bass fishing, and returned home to get some sleep before returning to work at eleven o’clock that night. Upon Paul’s return to the camp, the decedent asked Paul why he could not keep the place clean. An argument erupted and a physical struggle ensued. Paul’s wife was sitting on the porch and evidently saw the entire episode but did not testify.
Poole testified that Paul Vincent did attempt to strike the deceased, but could not testify as to who threw the first punch or *25 blow, because the two were grappling when he turned to view the altercation. Poole stated that the deceased did strike Paul with a stick after the struggle ensued.
Poole testified that at some point, Paul obtained a .22 caliber rifle from his truck. Poole stated that he yelled at Paul to put the rifle down and not to shoot his father. According to Poole, Paul then laid the rifle down. Poole testified that he heard no shots fired, but his hearing could have been impaired, as he was approximately 150 feet away from Paul standing next to a dump truck with its engine running. According to Poole, the truck was not equipped with a muffler.
Thereafter, the decedent went into the camp and evidently called the police, as a sheriff’s deputy later arrived on the scene. Poole testified that Deputy Dewey Hebert handcuffed Paul and took Paul’s rifle into his possession. Poole’s testimony is somewhat vague as to how many times or at what point the deceased entered and exited the camp, before the argument and confrontation erupted in the front yard. However, his testimony is clear that there was a struggle between Paul and the deceased, that Paul raised his hand against his father, and that Paul pointed a rifle at his father.
The testimony of Poole and Paul Vincent is in serious conflict. Paul Vincent denied that Poole was ever present. Paul denied striking his father, stating that the decedent struck him from behind as he was walking into the camp when he told him he would clean up the yard after he got some sleep. Paul testified that he got the weapon, a .22 rifle, only in an effort to prevent his father from beating him. He testified that he did not try to shoot his father. He stated that Deputy Hebert did not arrest him and no charges were filed against him. Although decedent’s will states that an offense report was filed in the sheriff’s office, no evidence of such was presented at trial.
Appellant complains that the proponents of the will failed to carry their burden of proving the acts described in decedent’s will as justifying disinherison.
La.C.C. art. 1621 was last amended by Act 456 of 1985 and, since the effective date of that act, reads in pertinent part as follows:
“The just causes for which parents may disinherit their children are twelve in number. There shall be a rebuttable presumption as to the facts set out in the act of disinherison to support these causes. These causes are, to-wit:
1. If the child has raised his or her hand to strike the parent, or if he or she has actually struck the parent; but a mere threat is not sufficient ...” (Emphasis added).
Prior to the 1985 amendment, the article contained no language relative to the burden of proof in cases involving disinherison for cause by parents of their children. The cases prior to the 1985 amendment placed the initial burden of proof on the succession or heirs to prove the acts described in the will justifying disinherison by a preponderance of the evidence. See Succession of Chaney, 413 So.2d 936 (La.App. 1st Cir.1982), writ denied 420 So.2d 449 (La.1982); Succession of Lissa, 198 La. 129, 3 So.2d 534 (La.1941). The 1985 amendment establishes a rebuttable presumption as to the facts set forth in the will supporting the act of disinherison and the burden now rests with the party opposing the disinheri-son to rebut this presumption.
The trial court, at the close of evidence, found the appellant’s testimony self-serving and incapable of belief. The trial court accepted William Poole’s testimony as credible and concluded that cause for disinheri-son under La.C.C. art. 1621(1) was established. Although the trial court did not allude to the presumption accorded by the 1985 amendment to Article 1621, it is clear that, accepting the trial court’s credibility determination, the evidence offered by appellant is totally insufficient to rebut the presumption accorded by Article 1621. We find no error in the trial court’s conclusion.
Appellant argues that the presumption now accorded by Article 1621 should not be applied in this case because the will was written in 1984 and, at that time, the heirs enjoyed no such rebuttable presumption. *26 We disagree. Rights in a succession do not vest until death. The testator in this case died on April 11, 1986, after the effective date of the amendment. Henry v. Jean, 238 La. 314, 115 So.2d 363, 367 (1959).
For these reasons, the judgment of the trial court is affirmed. Appellant is cast with all costs of this appeal.
AFFIRMED.