## WM. REED et al. v. H. H. CROCKER et al.

Conventions by which it is agreed that rights to a future succession shall be sold for a particular
consideration are prohibited by law, and consequently null.

The renunciation of a succession must be made by a public act before a notary, in presence of two
witnesses.

A special transfer and assignment of rights to an estate, in favor of one person, cannot be viewed
as a renunciation, and is not a ratification of a promise to renounce.

To determine the nature and effects of acts, the motives of the parties must be considered.

Collation is not obligatory on collaterals who inherit in default of forced heirs. It is only due by
those who have received in advance of their legitimate portion as forced heirs. Special legacies
to collaterals, when there are no forced heirs, belong exclusively to the legatees, and are not sub-
ject to collation.

A testator who has natural children complies with the law if he bequeaths three-fourths of his estate
to one or more of his legitimate collateral relatives. They cannot be regarded as forced heirs.

APPEAL from the Second District Court of New Orleans, *Morgan*, J.
   *Ogden & Leovy* and *P. E. Bonford*, for plaintiffs. *Purvis & Dugué*, *R.
Hunt* and *L. Pierce*, for defendants and appellants.

COLE, J. *Elisha Crocker* died, leaving a large estate and no forced heirs.

By his will he appointed *H. H. Crocker*, one of his natural children, his
executor, and distributed his property between his housekeeper, who is a
colored woman and was once his slave, and his children whom he had by her,
and who were legally acknowledged by him previous to his death.

The deceased left no father nor mother, and only one brother and one sister,
(since dead,) and the descendants of brothers and sisters, who could only claim
his succession as legal heirs.

To a number of these collaterals he gave, during his lifetime, considerable
sums of money and other property.

*Reed*, claiming to be a legitimate nephew, brings this suit to annul the will,
so far as it disposes of more than one-fourth of the property, asks to be recog-
nized as an heir, and demands a partition of the estate. In this he is joined by
others of the same relationship.

As all the parties are anxious to have this litigation terminated, we shall,
therefore, express no opinion on the various preliminary questions raised by
the learned and distinguished counsel on both sides, and proceed at once to the
merits of the case.

The heirship of the plaintiffs to the deceased is satisfactorily established.
The will is partially invalid. Art. 1473 C. C. provides that when the natural
father has not left legitimate children or descendants, the natural child or chil-
dren, acknowledged by him, may receive from him, by donation *inter vivos* or
*mortis causa*, to the amount of the following proportions, to wit: one-fourth of
his property, if he leaves legitimate ascendants or legitimate brothers or sisters,

or descendants from such brothers and sisters, and one-third if he leaves more remote collateral relations.

Art. 1474 declares that: "In all cases in which the father disposes in favor of his natural children of the portion permitted him by law to dispose of, he is bound to dispose of the rest of his property in favor of his legitimate relations ; every other disposition shall be null, except those which he may make in favor of some public institution."

This will is then null, so far as it relates to three-fourths of the property.

The natural children are entitled to one-fourth of the property, and the legal heirs or their assignees take three-fourths thereof.

The most important question in this case is whether certain assignments are valid which were made by some of the heirs to said *H. H. Crocker*. Before determining this, it is proper to decide as to the validity of certain contracts made by said assignors with the deceased.

They are all of a similar form, and commence first with a receipt of a bond of the city of New Orleans, its description and amount, and interest that it bears. Then follows the important part thereof for this controversy, to wit: "Which bond I promise to keep carefully and faithfully, and not alienate or incumber to the prejudice of the said *Elisha Crocker*, who is the owner thereof, but it is the express understanding and agreement between the depositor and holder, that the said holder will collect the semi-annual interest as it becomes due according to the tenure of the bond, and apply the same to her own use and benefit, as she may think proper, without being obliged to refund the same to the said owner of the bond, for the interest thus made. And should the depositor hereafter think proper to donate the said bond to the holder, as a bequest, she, the said holder, agrees to accept the same in full satisfaction of all claims she might set up or urge against the property or effects which might be left at the decease of the donor."

These contracts are clearly invalid, and can have no binding force in law. They are conventions by which it was agreed that rights to a future succession should be sold for a particular consideration.

They are plainly prohibited by Art. 1881 C. C.: "Future things may be the object of an obligation. One cannot, however, renounce the succession of an estate not yet devolved, nor can any stipulation be made with regard to such a succession, even with the consent of him whose succession is in question."

The authority of Troplong, quoted by counsel of plaintiffs, goes only so far as to declare that a testator may impose on his heir the condition to renounce a succession; but this renunciation must be made *after the death* of the testator, and it is left to the discretion of the heir to determine if he will take his hereditary share or the substitute therefor contained in the will.

"Le testateur peut aussi imposer à son héritier la condition de renoncer à une succession.

"Cette proposition ne souffre pas de contradiction quand il s'agit d'une succession échue. Je n'y vois pas plus de difficulté quand il s'agit d'une succession non échue et que la renonciation ne doit avoir lieu que lorsque *cette succession s'ouvrira*. Par exemple, un père donne à sa fille dix mille francs si elle renonce à la succession paternelle quand elle s'ouvrira. Cette disposition est tout à fait valable, la fille aura à voir s'il est de son intérêt de préférer les dix mille francs à sa part héréditaire, ou sa part héréditaire, aux dix mille francs, et cette option ne se fera que *lorsque la succession sera ouverte.*

"C'est le cas précis de l'Art. 843 du Code Napoleon, qui permet à l'héritier l'avantage de renoncer à la succession pour s'en tenir à son don; nul principe n'est blessé dans de telles circonstances.

"Il n'y a pas lieu à cet égard de distinguer si la succession à laquelle l'héritier est obligé de renoncer, est ou non la succession du testateur ou du donateur; dans tous les cas la cause n'a rien que de très licite et il suffira que le donataire ou légataire *fasse sa renonciation* à l'époque de l'ouverture de la succession." Troplong, Donations et Testaments, No. 269.

The whole doctrine contained in the preceding passages is that a testator may bequeath in his will a fixed sum of money, or other determined property, to an heir, on condition that he will, after the succession is opened, renounce his hereditary share; and the heir may or not, as he thinks his interest dictates, take the fixed sum and renounce.

Supposing this doctrine to be correct, still it has no direct bearing on the case at bar.

*Elisha Crocker* inserted no condition in his will by which these parties were to have the bonds as a consideration for renouncing his succession.

The whole part of his testament that refers to these bonds and other money donated to the heirs is the following:

"I have also several relatives, descendants of my deceased sisters. To all of these relatives I have heretofore given a considerable portion of the property I have acquired during my long residence in this city. Very recently I have distributed amongst them sums equal to one-third of what I possess, *reserving the right to recall* the whole or any part thereof.

"I now *release* all of them from the obligation to return any part thereof, and confirm them in the full possession and use thereof. I shall therefore make no further bequest to them, but shall proceed to divide the remainder of my property and effects as follows." He then divides his property between his concubine and his natural children.

Now if *Crocker* had put in his will that he left these bonds to these heirs on condition that they would renounce their hereditary shares in his estate, then if after his death they accepted the bonds they would be compelled to renounce. But he annexes no condition to his gift.

It is true that by the contracts, if he donated them the bonds, they were to be considered in full satisfaction of all claims they might urge against his estate. But these contracts cannot control his last will, for between the time that elapsed from the making of these contracts until the writing of his will he may have changed his intention, and therefore inserted no condition in his will, but left it free for his heirs to take the bonds and also to claim their hereditary shares.

It is clear that by Art. 1881 C. C. the heirs are not bound by the stipulations in the contracts as to a future succession; if, however, they thought proper to renounce their rights to the estate on account of having received those bonds, they could do it, as they have the right to renounce, even if they had never received any consideration therefor from the testator.

And this is what the counsel of plaintiffs maintain. They say that they have renounced, and we now will consider this point.

This renunciation of these heirs is based on certain acts, and as they are all the same, except as to names and places where they were passed, we will give one of them:

"Know all man by these presents, that we, *David Crocker*, *Henrietta Crocker*, *Harriet Crocker* and *Warren Crocker*, of the county of Tompkins, and *Charles Crocker*, of the county of Cayuga, State of New York, do hereby bind and obligate ourselves in manner following, viz: That whereas the late *Elisha Crocker*, of the city of New Orleans, State of Louisiana, did, by last will and testament, dated the 15th February, 1854, and duly admitted to probate on the 12th July, 1854, nominate, constitute and appoint his acknowledged natural son, *Henry Hicks Crocker*, his sole executor and detainer of his estate; and whereas the right and capacity of the natural children of the said deceased and of their mother '*Sofa*,' legatees named in said will, to take and accept the whole amount of the legacies therein bequeathed, have been questioned by parties claiming an interest in said succession, although the said executor maintains that said will is good and valid in law and equity; and whereas the counsel for absent heirs, *Robert N. Ogden*, *Esq.*, has joined with one *William Reed* in a suit before the said honorable Second District Court of New Orleans, to attack said will and to set aside in part the dispositions contained therein in favor of the said natural children and of their mother '*Sofa*,' therein named; and whereas, any legal proceedings to defeat the benevolent intentions of the said testator, and to prevent the property by him left at his decease from being distributed or disposed of as the testator has desired and expressed in his said last will, is entirely contrary to our wishes, and can receive no countenance from us, we therefore protest against the further prosecution of the said suit, No. 8012, on the docket of the said Second District Court of New Orleans, wherein said *R. N. Ogden*, as counsel for absent heirs, assumes to join the said *William Reed* in opposing the execution of the provisions of the will aforesaid, and prays an order of sequestration of the moneys, movables, rights, &c., appertaining to the succession of the said *Elisha Crocker*, deceased; and whereas, in his lifetime, as is truly stated in the body of said will, the said *Elisha Crocker*, now deceased, in the distribution of his estate among his collateral relations, did advance to the undersigned property of considerable value and also moneys, for all which full acquittance and discharge is given to the undersigned in and by said will.

"Now in consideration of the premises, and from love and affection for the deceased, and from regard to the children of said deceased and of their mother '*Sofa*.' the legatees named in the said will, and in further consideration of the sum of five dollars, each to us in hand paid this day, at the sealing and delivery of these presents, by the said *Henry Hicks Crocker*, executor and legatee of the deceased *Elisha Crocker*, we do hereby relinquish and quit-claim in favor of *Henry Hicks Crocker*, executor and legatee of the deceased *Elisha Crocker*, to all and singular any rights, claims or demands whatsoever to which we may be entitled, under the laws of the State of Louisiana, as a legitimate relation of the said deceased *Elisha Crocker*, to any of his estate by him left at his decease, and do hereby expressly waive, in favor of the said *Henry Hicks Crocker*, the nullity, if any there be, pronounced by the Article No. 1474 of the Civil Code of Louisiana, in all cases in which the father disposes in favor of his natural children of the portion permitted him by law to dispose of, and which Article further prescribed that in such event he is bound to dispose of the rest of his property in favor of his legitimate relations; and we do further declare, that so far as we have any interest in the matter of said will, or are thereby affected in interest by the provisions thereof, we wish the same to be carried into effect

REED
v.
CROCKER.

in all its parts and clauses, and that the share in the succession of the said deceased *Elisha Crocker*, to which we might be entitled under the laws of Louisiana, shall enure to the benefit of said *Henry Hicks Crocker*, executor and legatee of the deceased. And the said *Henry Hicks Crocker*, being here personally present, accepts the said quit-claim and assignment, the same being considered by all parties as a compromise made with a view of avoiding litigation, and as a settlement by mutual consent of any and all differences or contradictory interests between the parties as heir or legatee of the deceased *Elisha Crocker*.

"In faith whereof, the parties to this act have signed the same in duplicate, at Lansingville, in the county of Tompkins, State of New York, on this 28th day of September, one thousand eight hundred and fifty-five." Then follows the signatures of the parties and authentication of the act.

The form of this act is a serious objection to it as an act of renunciation, for Art. 1010 C. C. declares: "The renunciation of a succession is not presumed, it must be made expressly by public act before a notary, in presence of two witnesses."

It is also evident that it was not the intention of the parties to these acts to make what is legally contemplated a renunciation of a succession; their manifest object was to transfer their hereditary rights in the property left by the will to *Henry Hicks Crocker*.

Their intention was not to make a general renunciation, which would have redounded in favor of their co-heirs who contested the will; on the contrary, they protest against any attempt to defeat it.

They knew that suit was commenced to annul a part of the provisions of the testament, on the ground that a part of this property must go to the collateral relations. They were also aware that the intention of the deceased in getting them to promise to consider the bonds as a substitute for their hereditary rights, was to give him a privilege of bequeathing the balance of his property principally, not to his collateral relations, but to his natural children, and that his object was not that they should renounce so as to benefit the former, but the latter.

It is also argued, that these assignments may be viewed as a ratification after the death of *Elisha Crocker* of the alleged promise of the assignors to renounce, made anterior to his decease; and that although a promise to renounce, made before the death of the testator, is illegal, yet that this promise may be ratified after his death.

These assignments cannot be regarded as a ratification, for the promises in the receipts by which some of the heirs agreed to consider the bonds, if they were bequeathed to them, as an equivalent for their rights in his estate, must be interpreted, that they would renounce all their rights to the estate, and neither claim nor exercise control over any part of it.

But these assignments do not contain a general renunciation; on the contrary, the assignors specially transfer their rights to one person, and thus pretend to control their portion of the estate, which establishes that they had no intention of executing a general renunciation, but, on the contrary, of claiming their shares and of assigning them to *Henry H. Crocker*.

A special transfer and assignment of rights to an estate in favor of one person cannot be viewed as a renunciation, and consequently is not a ratification of a promise to renounce.

In order *to* determine the nature and effects of acts, the motives of the parties must be considered. A careful examination of these acts establishes that the assignors had no intention of renouncing the succession, but that their object was to transfer their portions to *H. H. Crocker*, who, being present, accepted the quit-claims and assignments.

They must then be considered not renunciations of the succession, but transfers and abandonments of these heirs to *H. H. Crocker* of their rights in the estate of the deceased. Vide C. C., Arts. 996, 997.

It is urged that if these assignments are decreed valid, the law will be evaded and the testator will be allowed to dispose of his property indirectly in a way he could not do directly.

This objection is invalid. The design of the Legislature in the prohibitory laws relative to the disposition of property to natural children, is to assure to the relatives of the testator a fixed portion of his estate, and to stamp its disapprobation on illicit intercourse, by depriving the natural parent, even in the absence of forced heirs, of the liberty of bequeathing his estate according to his volition.

When the rights of the heirs are secured, the law does not then pretend any more to regulate the disposition of the property, and the heirs have the prerogative of donating, selling or disposing of it as they wish.

The object of the law is accomplished. The heirs have received their legal share, and the parent has been punished, for he has been deprived in his death of the consolation of knowing that his fortune will be enjoyed by those who are still precious in his sight, notwithstanding they are the fruits of an unlawful connection.

The next question for our solution is, whether the amounts already received by the heirs must be considered in settling the estate and making a partition.

As the testator released in his will those who had received deposits or loans of property from the obligation to return them, they must be considered as donations *mortis causa*, and those heirs have the right to receive their share in the estate of the deceased, without any regard to what they have previously received as donations.

Collation is not obligatory on collaterals who inherit because there are no forced heirs. It is only due by those who have received in advance of their legitimate portion as forced heirs, but where an heir has no right to any particular part of the estate, unless the deceased died intestate, then he can only claim his portion out of the estate that remains at the decease, and cannot interfere with any action or donations made anterior to the opening of the succession.

Art. 1305 declares that "the collation of goods is the supposed or real return to the mass of the succession which an heir makes of property which he received in *advance of · his share* or otherwise, in order that such property may be divided together with the other effects of the succession."

Art. 1313 declares that "the obligation of collating is confined to children or descendants succeeding to their father's and mother's or other ascendants, whether *ab intestato*, or by virtue of a testament."

"Therefore, this collation cannot be demanded by *any other heir*, nor even by the legatees or creditors of the succession to which the collation is due."

Art. 1489 declares that "any disposal of property, whether *inter vivos* or *mortis causa*, exceeding the *quantum* of which a person may legally dispose to the prejudice of the forced heirs is not null, but only reducible to that *quantum*." Vide C. C., Art. 1314.

It is clear from these Articles, that collation is only obligatory on forced heirs, who are those that the donor cannot deprive of the portion of his estate reserved for them by law, except in cases where he has a just cause to disinherit them.    C. C. 1482.

We would observe that the dispositions of the testament in favor of " *Sofa*," the concubine of the testator, are null and void; (C. C. Art. 1474) and that the dispositions of the the will in favor of *H. H. Crocker*, of *Mary Bosworth* and of *Susan Crocker*, the natural children of the testator, must be reduced to the one-fourth of the amount of the testator's estate.

The validity of the said assignments is also recognized, and the portions of the assignors in said estate must be given to said *Henry Hicks Crocker*.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be avoided and reversed, so far as it deprives the said *Henry Hicks Crocker* of the benefit of said assignments, and gives the portions of the assignors to the co-heirs of the same degree.

It is further ordered, adjudged and decreed, that the judgment of the lower court be amended, so as to recognise the following persons as the heirs of the testator, *Elisha Crocker*, to wit:

1st. *Lucius Crocker.*

2d. *Charles, David, Warren, Henrietta, Harriet, Abby*, wife of *E. J. French*, and the children of *Nathaniel*, viz: *Jay, Frank* and *Charles*, the children of *David*, brother to the deceased.

3d. *Lucy M. Southworth*, wife of *Aug. C. French*, the child of *Sophia*, a sister.

4th. *William Reed, Laura Reed*, wife of *William Fitch, Elector Reed*, wife of *William Smith*, and a minor child of *Elkin Reed*, and also a minor child of *Lucius B. Reed*, both deceased, children of *Laura*, sister to deceased.

5th. The minor child of *Myra Griffith*, deceased, daughter of *Elector Crocker*, sister to *Elisha*.

6th. *Laura*, wife of *Whitcomb Francis Hurd*, and *Elizabeth*, wife of *J. E. Bruce*, children of *Lucy Crocker*, sister to *Elisha*.

That three-fourths of the estate shall be divided among the said heirs and the assignee of any of them, according to their respective rights.

And that the judgment be amended so as to recognize the validity of the assignments of a portion of the heirs of *Elisha Crocker*, to wit, of *Henrietta M. Crocker, Frances F. Hurd, Charles Crocker, Lucius Crocker, Elizabeth Bruce, David Crocker, Warren Crocker* and *Harriet Crocker*, of their shares in the estate of *Elisha Crocker*, to *Henry Hicks Crocker*.

And that three-fourths of the said estate be divided among those of the said heirs who have not transferred their rights, or their assignees; and *Henry Hicks Crocker*, as the assignee of the said portion of the heirs, who have transferred their shares to him, according to the respective rights of the parties.

That the judgment be amended, so as to declare the dispositions of the will in favor of " *Sofa*," the concubine of the deceased, null and void; and that the dispositions of the will in favor of the natural children of the deceased, to wit, of *H. H. Crocker, Mary Bosworth* and of *Susan Crocker*, be reduced to one-

fourth of the testator's estate, and that the said estate is to be distributed without any regard to collation; and the said heirs, assignees and legatees are to take their shares in the estate without being obliged to account for anything they may have received before the death of the said testator.

It is further ordered and decreed, that the judgment of the lower court, so far as not reversed and as thus amended, be affirmed; and that it be remanded to the lower court for the purpose of making a partition according to law among those entitled to the said estate, as aforesaid; and that the costs of appeal be paid by the appellees, and those of the lower court by the succession.

Vide *Creswell* v. *Seay et al.* 19 L. R. 521; 3 Marcadé, pp. 118, 168, No. 241; 1 Marcadé, 52; C. C. 912, 913; *Cole* v. *Executor*, 7 N. S. 422; 4 Marcadé, p. 375, No. 452; 5 Marcadé, 90.

---

## SAME CASE ON A RE-HEARING.

COLE, J. Appellees in their motion for a re-hearing, allege that "*Henry Hicks Crocker* being the testamentary executor at the time the several transfers were made to him, could not, under the provisions of the Code, acquire any portion of the property then under his administration."

"That the Act allowing executors and others, who are legatees, &c., to purchase, applies only to purchases made at the public sale which takes place of the effects of the succession in due course of law."

The provisions of law forbidding executors, except in certain cases, to purchase any part of estates under their care, do not apply to assignments of heirs to them of their rights in the estate.

Appellants have also asked for a re-hearing on the following point:

"There is error, we respectfully suggest, in the decree of this honorable court, ordering the partition of the estate of the testator without regard to the amount *bequeathed* to the collaterals, and excluding the natural children from participating in this important portion of the succession."

As appellants appear to have misconstrued a part of our judgment, we will add a few remarks in explanation, for the direction of those who shall make the partition.

Our judgment did not order the partition of the estate without regard to the amount *bequeathed* to the collaterals and exclude the natural children from participating in this part of the succession.

In our judgment we declared: "That the said estate is to be distributed without any regard to collation; and the said heirs, assignees and legatees, are to take their shares in the estate without being obliged to account for anything they may have received before the death of the said testator."

We did not explain the mode of partition, as the cause was remanded to the lower court for the purpose of making a partition.

We had been requested to decide if the collaterals were obliged to collate, and we decreed, they were not; but we did not detail what was to compose the estate to be divided, nor in what manner the quarter due to the natural children or the three-quarters of the collaterals, was to be determined, as this would be settled in the lower court.

REED
*v.*
CROCKER.

We think that the following principles, which, in our opinion, are not anta-gonistical to our judgment, ought to govern in the partition.

In order to fix the one-fourth of the estate, the succession should be con-sidered as consisting not only of the effects in the testator's possession at the time of his decease and legal claims of the estate, but also of that which was donated in the will. Donations made by the testator during his life, are not to be in-cluded in the mass of the estate.

When the whole mass of the succession is thus formed, the estate is to be divided between the natural children and collaterals, according to their respec-tive proportions, to wit, one-fourth to the former and three-fourths to the lat-ter, and the collateral relations are to take their share in the three-fourths with-out any regard to donations to them in the will, or to gifts to them by the tes-tator during his life.

For special legacies to collaterals, when there are no forced heirs, belong ex-clusively to the legatees, and are not subject to collation.

A testator who has natural children complies with the law, if he bequeaths three-fourths of his estate to *one* or more of his legitimate collateral relations, for they are not regarded as forced heirs.

Let us suppose the testator has bequeathed in his will $20,000 to his colla-teral relations, and the entire estate, including these legacies, is $100,000, the natural children would then have one-fourth of this amount, *i. e.* $25,000, and the remaining three-fourths, *i. e.*, $75,000, less the $20,000, bequeathed to col-laterals, that is to say $55,000 would be divided among all the collateral rela-tions without regard to collation. If, then, there were five collateral relations, heirs of the testator, each of them would receive $11,000, and also retain the amount bequeathed to him in the testament and the donations to him by the testator during his life.

Before concluding, it should be observed, that the semi-annual interest on the bonds of the city of New Orleans, deposited with some of the heirs, is not to be included as a part of the estate, as it was given to them by the testator during his lifetime. .

When the partition is made, the estate must be considered as consisting of:

1st. The amounts donated or bequeathed in the will.

2d. The property in the testator's possession at the opening of the succes-sion, and all legal claims of the estate.

The partition must be made according to law, in accordance with the judg-ment in this case as thus explained.

It is, therefore, ordered, that the re-hearing prayed for by plaintiffs and de-fendants be refused.