475 So.2d 56 (1985)
Rex WEST, Plaintiff-Appellant,
v.
Oran H. WEST, Defendant-Appellee.
No. 17080-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1985.
Rehearing Denied September 20, 1985.
Writ Denied November 15, 1985.
*57 Kidd & Kidd by Paul Henry Kidd, Jr., Monroe, for plaintiff-appellant.
Truett West, Farmerville, for defendant-appellee.
MARVIN, JASPER E. JONES and FRED W. JONES, JJ.
FRED W. JONES, Jr., Judge.
This family dispute comes to us on appeal from a judgment nullifying an exchange deed which allegedly dealt in the succession of a living person. Upon review of the stipulated facts, the "exchange deed", and various acts of ratification, we reverse for the following reasons.
During their marriage, Furman West and Mollie West, parents of the litigants, acquired a tract of land consisting of approximately 270 acres. Furman died, leaving the naked ownership of his one-half interest in the tract to his ten children in equal undivided proportions, and leaving his widow with her community one-half together with the usufruct over the other one-half.
On January 2, 1979 an instrument drawn up in the form of an exchange deed and executed by Mollie West and nine of her children was filed in the conveyance records of Union Parish. Ostensibly, the instrument conveyed full interest in 27 acres to Rex West (with reservation of Mollie West's right of habitation) and conveyed one-half of Rex West's interest in the remaining acreage to his mother and one-eighteenth to each of his siblings. Oran West refused to sign the instrument and it was filed without his signature.
Mollie West died October 16, 1982. Rex West instituted this suit on August 22, 1983 seeking a partition by licitation of the 27 acres, alleging his interest to be 19/20ths and Oran West's interest to be 1/20th. After denial of his exception of nonjoinder of indispensable and necessary parties on January 30, 1984, Oran West filed an answer alleging that the instrument was null. Between March 26 and March 31, 1984, Rex West and all his siblings except Oran West signed identical documents entitled "Act of Ratification."
Each "ratification" is in authentic form and styled as an affidavit. The affiants stated that they were parties to the instrument "referred to as an exchange deed," that they "acknowledge, approve and ratify the signatures and terms of said document," and that they:
"[wish] to abide by the intent and purpose of said document in that the purpose thereof was to give full ownership of the 27 acre tract ... unto Rex D. West in return for Rex West conveying, transferring, and divesting himself of all his property interests, past, present and future, in the [remaining] property ... unto all of the remaining parties to the instrument."
The trial judge ruled that "the only interpretation... possible which would allow the intent of the parties to govern" was that Rex West was contracting with regard to his mother's future succession. We disagree.
While a trial judge is better situated for weighing and assessing witness testimony, this does not apply to documentary evidence. Consequently, the standard of review is a fair and independent evaluation of documentary evidence without deferrence to the trial court's conclusions. Woodard v. George Cole Chevrolet, Inc., 444 So.2d 1367 (La.App.2d Cir.1984); La. Constitution Art. 5, § 10(B).
The documentary evidence in this case consists of an exchange deed, various acts of ratification, and stipulations of fact. No evidentiary hearing was held.
*58 "Contracts must be construed in such a way as to lead to logical conclusions and to give effect to the obvious intention of the parties." Lambert v. Maryland Cas. Co., 418 So.2d 553 (La.1982). Such construction should look to "the probable intention of the parties under all the circumstances" and seek to find the construction that gives legal effect to the intent of the parties. Sanders v. Rudd, 427 So.2d 1271 (La.App.2d Cir.1983). It should be assumed that the intent of the parties was to make a legal contract unless the opposing party can prove to the contrary.
Oran West seeks to establish that the true intent of the "exchange deed" was to deal in future succession rights. Such a contract would be absolutely null as contra bonos mores. La.Civil Code Articles 984, 1887[1] and 2454. See also La.Civil Code Articles 1779[2], 1893[3], and 1895[4].
Rex West argues that Oran does not have standing to attack the exchange deed. This is clearly not the case. Any interested party can plead an absolute nullity. Whitten v. Whitten, 303 So.2d 238 (La.App.2d Cir.1974).
In order to fully appreciate the issue raised, it is worthwhile to review the jurisprudence and scholarship pertaining to the question.
Planiol states in § 1012:
"The law does not permit persons to make contracts as to successions not yet open. The general principle is formulated in Art. 1130 [La.Civil Code Article 1887 (1870)] which forbids all sorts of `stipulations', and is applied especially to the sale of successions in Art. 1600 [2454 (1870) ] and to renunciations by Art. 791 [no similar provision in La.Civil Code]; in addition Art. 1389 [2326 (1870) now 2330 (1979) ] renews these prohibitions in connection with the contract of marriage."
Planiol continues with a discussion of the history and motives of the prohibition:
"The suspicion which is raised against a contract regarding future successions is very old; they were already prohibited in Roman law. (Code, Bk. II, tit. 3, law 30). They were considered as immoral because the parties speculated on the death of a living person who was ordinarily one of their relatives, and in addition, as dangerous because they could engender in the minds of parties the thought of crime to hasten its commission. Those motives are extremely feeble.
"Our ancient law, although retaining the Roman prohibition, admitted numerous exceptions in favor of families, and especially of the nobility."
After stating that the Code Napoleon took a more prohibitive stance, Planiol discusses the limits of the prohibition in § 1015:
"The nature of the motives on which the prohibition on agreements regarding future successions is founded is such, that the nullity which sanctions it is a matter of public order; it is an absolute nullity which can be invoked by any of the interested parties.

"Limit of the Prohibition. The prohibition contained in Art. 1130 only applies to contracts having as their object the future succession and the rights that the parties have to assert, in such succession (example: Cass., 27 Jan. 1904, D.1904.1.359). One should not consider as null an agreement whose execution is suspended until the death of a person, if its object is other than the succession. Such is the promise of a dowry payable at the death of the promisor: it will become exigible against the succession, but it is not, for that reason, a right in the succession which one can claim as *59 heir." Planiol, Treatise on the Civil Law §§ 1012-1015. (Emphasis supplied).
Louisiana jurisprudence has relatively few cases directly addressing future succession issues. In Roy v. Roy, 382 So.2d 253 (La.App.3d Cir.1980), a deed of a house and 20 acres from two parents and two of three children to the third child was found to be a simulation. The recited consideration for the sale was no money to the parents and $2,000 to the two vendor children (found not to have been paid). The two vendor children were selling their right to inherit the property and the parents reserved a usufruct. This case was decided on a finding that the deed was a simulation and of no effect rather than a nullity for sale of a future succession.
In Jackson v. United Gas Public Service Co., 196 La. 1, 198 So. 633 (1940), the issue was whether irregular heirs could sell an interest in property in a succession after the death of the de cujus but before judicial recognition of the heirs' interest. The argument turned on the fact that irregular heirs did not have seizen until judicial recognition of their rights. Because they did not have seizen, the heirs were trying to establish that the sale was a transfer of future succession rights. The heirs' argument was rejected because the prohibition is against sale of future rights in the succession of a living person.
The issue of a promise to renounce a succession before the death of the testator that was ratified after the death of the testator was raised but not answered in Reed v. Crocker, 12 La.Ann. 436 (1857). The case was decided on the ground that the "ratifications" were actually assignments that were not null since the testator had died. We note that the Reed court allowed heirs to effectuate an understanding they had with the testator which could not have been executed prior to the testator's death.
In Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175 (La.1900), the testator attempted to vary the effects of forced heirship through some elaborate estate planning. In that case, an agreement providing for care of a forced heir who was mentally retarded in return for waiver of her inheritance rights was held to be a nudum pactum under La.Civil Code Article 1887.
In Succession of Jacobs, 104 La. 447, 29 So. 241 (1901), an allegation that a mother had verbally expressed an intent to claim no interest in her son's estate during his lifetime was held to have not been proved. In dicta it was asserted that proof of such an allegation would not lead to estoppel of the claim since such would be giving effect to an invalid renunciation of an interest in a future succession. La.Civil Code Articles 984 and 1887 were cited as authority for this proposition.
In Tillery v. Fuller, 190 La. 586, 182 So. 683 (La.1938), a mother sold a greater interest than she had in a piece of property, then died. Her daughter, who had renounced the succession of her mother, later inherited an interest in the same property her mother had sold. The court held that the warranty obligation of the mother did not affect the daughter even though the daughter inherited via representation of her mother. In its reasoning, the court stated: "(t)he Civil Code, in terms, forbids the making of a sale or any stipulation or agreement to affect the succession of a living person." (Citing La.Civil Code Articles 2454 and 1887). Tillery, 182 So. at 692.
In Bouny v. Anheuser-Busch Brewing Ass'n, 155 La. 437, 99 So. 395 (1924), a donation by parents to their children contained some language stating that the children agreed to maintain the donation and that they waived all rights to invalidate, revoke or reduce the donation. The argument was that the waivers constituted a violation of La.Civil Code Article 1887. The court held that the transaction was a specifically authorized family partition under La.Civil Code Article 1724 and that the waivers were a contract between the donees with reference to property in which they had received a full interest.
In Strange v. Ivey, 369 So.2d 1180 (La. App. 2d Cir.1979), writ denied 371 So.2d 621, a vendor sold a one-seventh interest in *60 property by warranty deed when he only owned a one-fourteenth. He later inherited another one-fourteenth upon the death of his mother. When a partition suit affecting the property was filed without naming him as a defendant, he intervened. This court held that "one who sells by warranty deed an interest in land which he does not own and who later acquires an interest by inheritance, cannot claim the inherited interest against those vendees to whom he has warranted the interest, because such after-acquired title must legally inure to the benefit of those vendees." Strange, at 1183. This holding was predicated on the finding that the sale was of an undivided interest in land under warranty deed and that there was no intent to deal with a succession of a living person, as prohibited by La.Civil Code Articles 1887 and 2454.
Other cases mention the issue of dealing in the succession of a living person, but they are decided on other grounds. See Alexander v. Gray, 181 So. 639 (La.App. 2d Cir.1938); Aurienne v. Mt. Olivet, 153 La. 451, 96 So. 29 (1923); Ramsey v. Beck, 151 La. 190, 91 So. 674 (1922); Murphy v. Murphy, 136 La. 17, 66 So. 382 (1914).
An overview of the scholarship and jurisprudence in the area establishes several general principles. The law frowns on transactions that attempt to circumvent forced heirship. Cox, supra; Succn. of Jacobs, supra. The law encourages amicable property disposition among family members. Reed, supra; Bouny, supra; Planiol, supra. The prohibition against dealing in the succession of a living person is generally applied to transactions involving the succession itself rather than an interest in specific property. Planiol, supra; Bouny, supra; Jackson, supra; Reed, supra; Cox, supra; Succn. of Jacobs, supra; and Strange, supra.
A "succession" is defined as "the transmission of the estate of the deceased to his successors ..." La.Civil Code Article 871. An "estate" in this context is defined as "the property, rights and obligations that a person leaves after his death, ..." La.Civil Code Article 872. Under some circumstances, dealing with property that may become part of a succession obviously is not dealing with a succession. For example, a person is allowed to alienate his property even though it becomes part of his succession if never alienated. Therefore, care must be taken to apply the prohibitions of La.Civil Code Articles 984, 1887 and 2454 in light of the principles underlying them or absurd consequences may result.
In this case, a mother and her children sought to partition property owned by them in indivision in order that the youngest child, Rex, would be free to build a house on a portion he would own. Because the mother entered into the "exchange deed" effectuating this partition, Rex would be favored once the mother died since he would again inherit an interest in the remaining acreage. A fair reading of the exchange deed and the ambiguous acts of ratification reveals that Rex then received full ownership of 27 acres (less the interest of Oran, who did not join in the deed) in consideration for his conveying his past, present and future interests to his brothers and sisters. "Conveying" connotes a continuing action not necessarily completed in a single act. Because the deed itself did not convey Rex's future interests expressly, it is more probable than not that the intent was to convey the interests once they were obtained. Such a reading gives effect to the exchange deed and meaning to the acts of ratification.
It is unnecessary for us to rule as to whether a promise to convey a future interest in specific property not yet inherited is valid if the conveyance is conditioned on the death of the de cujus as Planiol suggests in the cited excerpts, since the promise to convey has been renewed after the death of the de cujus in the acts of ratification. See Reed, supra.
For the foregoing reasons, we reverse the judgment of the trial court and render judgment in favor of Rex West maintaining the validity of the "exchange deed". Consequently, Rex West is declared to be the owner of a 19/20ths interest and Oran West *61 is declared to own a 1/20th interest in the 27-acre tract.[5] We remand to the trial court for further proceedings in light of this opinion. Costs of this appeal are assessed to appellee.
NOTES
[1] Now La.Civil Code Article 1976 under the 1984 revision of the obligations articles.
[2] No corresponding revision article.
[3] Now La.Civil Code Article 1966 under the 1984 revision of the obligations articles.
[4] Now La.Civil Code Article 1968 under the 1984 revision of the obligations articles.
[5] The tract is described as follows:

All of the SW ¼ of SW ¼ of Section 1, Township 22 North, Range 2 West lying and being situated East of the center line of Louisiana State Highway No. 15, LESS AND EXCEPT 3.66 acres in the Southeast corner of said forty owned by John L. Kylle as described in Deed Book 299 at page 865 of the records of Union Parish, Louisiana. And .38 acres located in the Northeast corner of the SE ¼ of the SE ¼ of Section 2, Township 22 North, Range 2 West and containing herein transferred 27.50 acres, more or less, together with all improvements situated thereon and thereto belonging and more particularly described as follows:
Begin at the Northwest corner of the SW ¼ of the SW ¼ of Section 1, Township 22 North, Range 2 West and run South 130 feet along the forty line, thence West 248.4 feet to the center line of right of way of State Highway No. 15, thence South 40 degrees 08 minutes East 1495.0 feet along the center line of the right of way of State Highway No. 15 to the South forty line of the SW ¼ of the SW ¼ of Section 1, Township 22 North, Range 2 West, thence East 65.4 feet to the East right of way line of State Highway No. 15, thence North 40 degrees 08 minutes West 326 feet along the East right of way line of State Highway No. 15, thence South 88 degrees 34 minutes East 744.7 feet along the North line of the property owned by John L. Kylle to the East forty line of the said SW ¼ of SW ¼ of Section 1, Township 22 North, Range 2 West, thence North 01 degree 02 minutes East 1,000.9 feet to the Northeast corner of the said SW ¼ of SW ¼ of Section 1, Township 22 North, Range 2 West, thence North 88 degrees 25 minutes West along the forty line 1342.3 feet to the place of beginning, containing herein 27.88 acres, more or less, together with all improvements situated thereon and thereto belonging, as per plat of Richard A. Smith, Registered Land Surveyor of the State of Louisiana, attached hereto and made a part hereof.