# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 22, 2012

No. 11-30130

Lyle W. Cayce
Clerk

ARTHUR LOUIS ROBINSON, DOROTHY F. JACKSON,
ADMINISTRATRIX OF THE SUCCESSION OF ARTHUR LOUIS
ROBINSON,

PLAINTIFF-APPELLANT

v.

COCA-COLA COMPANY,

DEFENDANT-APPELLEE

Appeal from the United States District Court
for the Eastern District of Louisiana
2:10-cv-3060

Before BENAVIDES, STEWART, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:[*]

The Succession of Robinson appeals the district court's grant of a motion
to dismiss for Coca-Cola in an action for judicial partition and for restoration to
the situation prior to a series of contracts entered into by Robinson. Because the
district court properly granted the motion to dismiss, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-30130

## FACTS AND PROCEDURAL HISTORY

In 1934, Edward Barq, the originator of Barq's soft drinks, and Jesse Robinson ("Jesse"), the father of Arthur Robinson ("Arthur"), entered into a franchise agreement (the "1934 Agreement"), which permitted Jesse to manufacture and sell Barq's beverages in certain Louisiana parishes. Jesse formed Barq's Beverages, Inc. ("BBI"), through which he manufactured and distributed Barq's beverages.

Jesse died in 1949, leaving his wife, Marie, and three adult children, Arthur, Betty, and Yula. Upon Jesse's death, Marie received a one-half interest in BBI and a one-half interest in the 1934 Agreement. The three children each received a one-sixth interest in BBI and a one-sixth interest in the 1934 Agreement. Marie controlled the operations of BBI until 1970,when she had a stroke. Shortly thereafter, Arthur entered into a series of agreements selling his interests in BBI to his sisters.

On June 4, 1971, Arthur, Betty, and Yula entered into three agreements (collectively "1971 Agreements"). Pursuant to the first agreement, Sale of Interest of Movable Property ("Rights Agreement"), Arthur sold all interests he held in the 1934 Agreement to his sisters for $5,000. Pursuant to the second agreement ("Share Agreement"), Arthur sold to BBI his 198 shares of BBI stock for $270,000. Pursuant to the third agreement ("Agreement"[1]), Arthur agreed to sell to BBI for $80,000 "all the shares of the common capital stock of Barq's which Robinson may receive from his mother, Mrs. Marie V. Robinson, by inheritance and/or by gift inter vivos and/or mortis causa, or otherwise." The Agreement also set forth an escrow and payment schedule for disbursement of the $80,000, depending upon when Arthur sold the shares to BBI, and included a provision in the event that Arthur received no other shares.

---

[1] Robinson refers to this as the "Succession Shares Agreement" and Coca-Cola refers to this as the "Agreement to Sell" but it is merely entitled "Agreement."

2

No. 11-30130

Marie died on January 28, 1979, and her succession[2] was opened in New Orleans. Marie's will provided that her estate be divided equally between Arthur, Betty, and Yula. While the succession was pending, Arthur contracted with his sisters and BBI to dispose of all interests he was to receive through the succession ("1980 Agreement") for a total of $470,000.[3] Arthur was also released from all debts, expenses and taxes owed on behalf of Marie's estate.

Before Marie's death, two Louisiana attorneys, John Koerner and John Oudt, purchased the original Barq's Incorporated from the Barq family in Mississippi.[4] The name was changed to Barq's, Inc., and the headquarters were relocated from Biloxi to New Orleans. In 1988, Barq's, Inc., entered into an Asset Purchase Agreement to purchase certain BBI assets for $4,650,000. The remaining assets remained with BBI until its liquidation. BBI adopted a voluntary plan of liquidation and was dissolved on December 31, 1988.

Barq's, Inc., was purchased by Coca-Cola in 1995 in exchange for 1,388,685 shares of the Coca-Cola Company that were then valued at approximately $91,740,000.

Arthur died in 1996. In 2010, an action was filed in the U.S. District Court for the Eastern District of Louisiana on behalf of the Succession of Arthur Louis Robinson ("Robinson") asking the court to restore Arthur's stock and rights obtained pursuant to the 1934 Agreement between Edward Barq and Jesse Robinson. Coca-Cola filed a motion to dismiss. On January 5, 2011, the district court granted the motion and dismissed Robinson's suit with prejudice.

---

[2] A succession is the "transmission of the estate of the deceased to his successors." La. Civ. Code art. 871. The estate includes the "property, rights, and obligations that a person leaves after his death." La. Civ. Code art. 872.

[3] The 1980 Agreement provided for $390,000 plus the $80,000 set forth in the Agreement from 1971.

[4] In the interest of clarity, much of the historical background that is not pertinent to this decision is omitted.

No. 11-30130

## STANDARD OF REVIEW

We review de novo the district court's order on a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). This court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *Id.*

> To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* (Internal quotation marks, citations, and footnote omitted).

## DISCUSSION

**I. Whether Arthur Robinson's agreements to convey to his sisters and Barq's Beverages, Inc., certain property that he planned to receive from his mother violate public policy and are void under Louisiana law.**

The district court granted the motion to dismiss, finding that Robinson failed to establish that the various agreements in question were absolute nullities. Specifically, in a bench ruling, the district court said:

> For the reasons stated, as pointed out by defense counsel, in *West*[5] and in the *Planiol* treatise, the fact that Mr. Robinson, Arthur Robinson agreed to bind himself to sell in the future any shares of BBI that he may obtain from his mother in any manner in the future does not legally equate to transferring an interest in his mother's succession.
> I'm also granting the motion on the additional ground that under the so-called *bona fide purchaser doctrine*, where under Louisiana Civil Code the nullity of a contract does not impair the rights acquired through an onerous contract by a third party acting in good faith.

---

[5] *West v. West*, 475 So.2d 56 (La. 1985).

4

No. 11-30130

The plaintiff's primary argument here in opposition to the motion on this ground was that the defendant was not a good-faith purchaser but, rather, a successor in interest, and for the reasons we've said, as has been mentioned here this morning, it seems to me based on what's before the court at the present time, there is no evidence that the stock of the company was purchased but, rather, there was an asset purchase agreement; therefore, the defendant would not be considered a successor in interest. So for those reasons I'm going to grant the defendant's motion and dismiss this matter.

On appeal, Robinson asserts that he promised to sell the interest and rights in BBI that he planned to receive from his mother's succession while she was still alive and that such promises are absolute nullities under Louisiana law. Coca-Cola asserts that the agreements in question are not nullities and that Louisiana law does not prohibit contracts involving property that one may inherit.

Robinson is correct that Louisiana law prohibits the succession of a living person being the object of a contract based on centuries of legal principles.

Article 1976 of the Louisiana Civil Code states: "The succession of a living person may not be the object of a contract other than an antenuptial agreement. Such a succession may not be renounced." La. Civ. Code art. 1976 (1985).

5

No. 11-30130

Robinson cites various inapplicable and factually distinguishable[6] cases for the assertion that Robinson's agreements violated Article 1976, but also asserts that the holding in *West v. West*, 475 So.2d 56 (La. App. 2d Cir.1985), should be disregarded.   We disagree.

In *West*, the Louisiana Court of Appeal held that an "exchange deed" was valid as it did not expressly convey a future interest.  Furman West and Mollie West acquired a tract of land consisting of approximately 270 acres.  Furman died, leaving one-half interest in the tract to his ten children in equal undivided portions, and leaving his widow, Mollie, with her community one-half together with usufruct over the other one-half.  In 1979, an exchange deed was drawn up and executed by Mollie and nine of her children that conveyed a full interest in 27 acres to one of the children, Rex West, with reservation of Mollie's right of habitation, and conveyed one-half of Rex's interest in the remaining acreage to Mollie and one-eighteenth to each of his siblings.  Sibling Oran West refused to sign the instrument and it was filed without his signature.

Mollie died in 1982 and Rex filed suit the following year seeking a partition by licitation of the 27 acres, asserting that his interest was 19/20ths and Oran's interest was 1/20th. Oran filed an answer alleging that the exchange

---

[6] *Cox v. Ahlefeldt*, 308 So. 175, 180 (La. 1900) (An agreement providing for care of a forced heir, who was an "imbecile," in return for waiver of her inheritance rights was held to have no effect under the Louisiana Civil Code.); *Roy v. Roy*, 382 So.2d 253 (La. App. 3d Cir. 1980) (Deed of a house and twenty acres from two parents and two of three children to the third child was found to be a simulation and of no effect rather than a nullity for sale of a future succession.); *Liles v. Bourgeois*, 517 So.2d 1078, 1079 (La. App. 3d Cir. 1987) (Court invalidated a contingency fee contract between an attorney and a client wherein the fee was to be based upon a sum equal to one-fourth of the client's future inheritance from her mother and affirmed the trial court judgment awarding the attorney a fee on the basis of quantum meruit.); *Successions of Plummer v. Plummer*, 577 So.2d 751 (La. App. 1st Cir. 1991) (Affirmed a finding that the adoption of a wife by her husband was null and void); and *Kibbe v. Lege*, 604 So.2d 1366 (La. App. 3d Cir. 1992) (Denied plaintiff's attempt to recover through equitable estoppel under an alleged oral promise by decedent to leave certain property to plaintiff upon death of decedent.).

No. 11-30130

deed was null. Shortly thereafter, Rex and the remaining siblings signed identical ratifications of the exchange deed.

The trial court found that the only possible interpretation was that the intent of the parties was to contract with regard to Mollie's future right of succession. The Second Circuit Court of Appeal of Louisiana reversed and remanded, finding that the deed was valid. In its analysis, the court cited various authority for the proposition that the contract should be construed to give legal effect to the intent of the parties. *Id.* at 58. The court also reviewed relevant authority on the issue, including some of the cases cited by Robinson, and the Planiol treatise. As quoted by the court, some notable language from the Planiol Treatise, which Robinson also cites, includes:

> One should not consider as null an agreement whose execution is suspended until the death of a person, if its object is other than the succession. Such is the promise of a dowry payable at the death of the promisor: it will become exigible against the succession, but it is not, for that reason, a right in the succession which one can claim as heir.

*Id.* at 58-59. (Citing Planiol, *Treatise on Civil Law* §§ 1012-1015).

The *West* court further stated:

> An overview of the scholarship and jurisprudence in the area establishes several general principles. The law frowns on transactions that attempt to circumvent forced heirship. The law encourages amicable property disposition among family members. The prohibition against dealing in the succession of a living person is generally applied to transactions involving the succession itself rather than an interest in specific property.

*West*, 475 So.2d at 60. (Internal citations omitted). The court found: "Because the deed itself did not convey Rex's future interests expressly, it is more probable than not that the intent was to convey the interests once they were obtained. Such a reading gives effect to the exchange deed and meaning to the acts of ratification." *Id.*

7

No. 11-30130

In the instant case, Arthur agreed in the Rights Agreement to convey to his sisters:

> [I]n equal portions, all of the right, title and interest of appearer, Arthur L. Robinson, in and to that certain license or franchise granted by Edward Barq, Sr. to Jesse L. Robinson . . . dated July 31, 1934, as the same may have been subsequently amended by agreement dated March 13, 1939, by agreement dated March 24, 1948, by agreement dated February 25, 1948, and by any other agreements that affect or may affect said license or franchise, it being the intention of the said Arthur L. Robinson to convey to said purchasers any and all right, title and interest which he presently has or may have in said license or franchise, without reservation, including, without limitation, all such right, title and interest which he acquired, may have acquired or was entitled to acquire by inheritance from his late Father, Jesse L. Robinson, and such right, title and interest, if any, which he may have otherwise acquired by any agreement or other instrument entered into with purchasers herein and/or his Mother, Mrs. Marie V. Robinson, it being the further intention hereof that vendor shall no longer possess any right or interest in, or the enforcement of, any agreements(s) previously entered into by the parties hereto and Mrs. Marie V. Robinson in connection with or affecting said license or franchise.

Pursuant to the Share Agreement, Arthur sold to BBI his 198 shares of BBI stock for $270,000. Contemporaneously, pursuant to the Agreement, Arthur agreed to sell to BBI for $80,000 "all the shares of the common capital stock of Barq's which Robinson may receive from his mother, Mrs. Marie V. Robinson, by inheritance and/or by gift inter vivos and/or mortis causa, or otherwise." The Agreement also set forth an escrow and payment schedule for disbursement of the $80,000, depending upon when Arthur sold the shares to BBI, and included a provision in the event that Arthur received no other shares.

No. 11-30130

Robinson asserts that both the Rights Agreement and the Agreement are absolutely null as "attempts to sell rights whose coming into existence required the death of Arthur Robinson's mother." However, as set out above, that assertion is not supported by the very language of the Rights Agreement. These 1971 Agreements were executed contemporaneously. The Rights Agreement sets out the scope of Arthur's interests to be conveyed. The Rights Agreement states on its face that it is conveying any interest obtained by inheritance only from his father or acquired by other agreement with his mother or sisters. Robinson also asserts that the "may have" language in the Rights Agreement refers to future rights. We disagree, as "may have" appears to be referring to those rights presently in existence of which he is possibly unaware. The additional language in the separate Agreement regarding stock that Arthur may receive from his mother is not a transaction involving the succession itself but rather an interest in the mere possibility of specific property. *See West*, 475 So.2d at 60.

Further, as stated previously, while the succession was pending, Arthur contracted with his sisters and BBI to dispose of all interests he was to receive through the succession for a total of $470,000. Arthur was also released from all debts, expenses and taxes owed on behalf of Marie's estate. Robinson asserts that this 1980 Agreement is a nullity because it attempts to ratify the null Agreement. Coca-Cola asserts that this 1980 Agreement does not seek to ratify the Agreement, but rather "to effectuate the sale of Arthur Robinson's 58 shares of BBI and his remaining interest in the Succession of Marie Robinson." Inasmuch as the Agreement is not null, this argument is moot. Further, even if it constitutes ratification, it is consistent with *West*. *West*, 475 So.2d at 57.

**II. Whether Barq's, Inc., which purchased Barq's Beverages, Inc., or Coca-Cola, which purchased Barq's, Inc., was a successor in interest to Barq's Beverages.**

9

No. 11-30130

Robinson asserts that the district court erred in not accepting as true it's "plausible allegations that Barq's, Inc. also assumed the liabilities of BBI when it purchased BBI's assets," and instead finding that Coca-Cola was not a successor in interest. As the contracts are not null, this issue is moot. However, even if the contracts were nullities, Robinson's "plausible allegation" is not supported by the language in the Liquidation Agreement, which provided for the sale of "certain assets" of BBI to Barq's, Inc. BBI's remaining assets, stock and liabilities remained with BBI until liquidation. As cited by Coca-Cola, the purchase of some assets does not amount to a merger, and "thus the successor corporation is not liable for the acts or omissions of the predecessor." *Maltese v. Sunbeam-Oster Co., Inc.*, 1993 WL 386300 (E.D. La. 1993) (citing *LeBlanc v. Adams*, 510 So.2d 678, 682 (La. App. 4th Cir. 1987). Further, if Barq's, Inc., is not a successor in interest to BBI, it is impossible to make the leap to Coca-Cola, the subsequent purchaser of Barq's, Inc., being a successor in interest to BBI. Therefore, as discussed below, Coca-Cola is a good faith purchaser.

## III. Whether The Coca-Cola Company is a good faith purchaser of Barq's, Inc.

Robinson also asserts that Coca-Cola was aware of the nullity of the agreements at issue because prior to the "merger" with Barq's, Inc. Coca-Cola's attorneys reviewed the agreements before they then "proceeded with the merger despite being aware of the absolutely null contracts, thereby accepting the infinite risk inherent in basing one's ownership upon transactions that are void and nonexistent as being antithetical to sound public policy."

As the agreements are valid, this argument is moot. However, even if the agreements were nullities, this argument lacks merit. As stated in issue two, neither Barq's, Inc., or Coca-Cola is a successor in interest to BBI. Therefore, Coca-Cola is protected. Further, even if Barq's, Inc., was a successor in interest,

10

No. 11-30130

Coca-Cola would nonetheless be protected as a good faith purchaser of Barq's, Inc., as set out by Article 2035 of the Louisiana Civil Code, which states:

> Nullity of a contract does not impair the rights acquired through an onerous contract by a third party in good faith.
>
> If the contract involves immovable property, the principles of recordation apply to a third person acquiring an interest in the property whether by onerous or gratuitous title.

La. Civ. Code art. 2035.

Robinson asserts that Coca-Cola was not a purchaser in good faith because it had notice of the absolutely null agreements when it "merged" with Barq's, Inc., in 1995. Robinson bases this argument on the Coca-Cola executives "fiduciary duty to the company's stockholders to conduct a due diligence review of Barq's, Inc.'s rights to Barq's root beer before it paid its owners over $91,000,000. Certainly, the failure to review the documents in question would constitute a significant breach of those fiduciary duties and expose the company and its executives to liability."

> Article 2033 states:
>
> An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made. If it is impossible or impracticable to make restoration in kind, it may be made through an award of damages.
>
> Nevertheless, a performance rendered under a contract that is absolutely null because its object or its cause is illicit or immoral may not be recovered by a party who knew or should have known of the defect that makes the contract null. The performance may be recovered, however, when that party invokes the nullity to withdraw from the contract before its purpose is achieved and also in exceptional situations when, in the discretion of the court, that recovery would further the interest of justice.

11

No. 11-30130

> Absolute nullity may be raised as a defense even by a party who, at the time the contract was made, knew or should have known of the defect that makes the contract null.

La. Civ. Code art. 2033.

If Coca-Cola "knew or should have known of the defect that makes the contract null" just because Robinson believes it must have reviewed the contracts between Arthur, his sisters, and BBI pursuant to the purchase of certain assets from Barq's, Inc., then Robinson would absolutely also be charged with knowledge because Arthur was an actual party to the contract. As such, Arthur would have had to "invoke the nullity to withdraw from the contract before its purpose is achieved." The purpose of the contract, to sell Arthur's rights, was achieved years before[7] the commencement of this action, which was filed in 2010.

## CONCLUSION

As Arthur Robinson's agreements to convey his interests to his sisters and BBI were not null, Barq's, Inc./Coca-Cola was not a successor in interest, and Coca-Cola is a good faith purchaser. Hence, the district court properly granted Coca-Cola's motion to dismiss. Therefore, we affirm.

**AFFIRMED**.

---

[7] The 1980 Agreement provided for quarterly payments for 15 years beginning on January 1, 1981. Pursuant to the record, that would have been the latest possible time for achievement of the contract.