517 So.2d 1078 (1987)
HENRY R. LILES A Professional Law Corporation, Plaintiff-Appellant,
v.
Dorothy Sells BOURGEOIS, Defendant-Appellee.
No. 86-936.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1987.
*1079 Maurice Tynes, Lake Charles, for plaintiff-appellant.
Phillip W. St. Romain, Lake Charles, for defendant-appellee.
Before GUIDRY and YELVERTON, JJ., and CULPEPPER, J. Pro Tem.[*]
WILLIAM A. CULPEPPER, Judge. Pro Tem.
The issue presented by this appeal is the validity of a contingency fee contract between an attorney and his client wherein the fee contemplated was to be based upon a percentage of the client's future inheritance from her mother.
Henry R. Liles, a Professional Law Corporation, filed suit on December 13, 1985 to recover a legal fee from the defendant, Dorothy Sells Bourgeois, as a result of plaintiff's representation of defendant in assisting her to obtain the maximum possible estate from her mother, Grace Sells, upon her death. The fee was based in part on a percentage of the amount recovered by defendant from her mother's estate. The trial court held the contract invalid under LSA-C.C. Article 1887 and rendered judgment in favor of plaintiff in the amount of $15,000.00, on the basis of quantum meruit. Plaintiff appeals seeking $43,186.72, less a credit of $1,161.00, based on the contract. We affirm.
The trial court gave written reasons which we adopt in part as follows:
"The question before the court can be stated concisely. Is a contingency fee contract of employment with an attorney-at-law prohibited by Louisiana law wherein the fee is based upon a percentage of a future inheritance to be received by the client? As presented to this court, it is purely a legal question but an abbreviated statement of facts would be helpful.
On June 18, 1984 Dorothy S. Bourgeois and Henry R. Liles entered into a written agreement entitled, `Contract of Employment' which is Exhibit P-1. At the time of the agreement, it was Ms. Bourgeois's [sic] concern that her mother, Mrs. Grace Sells, was not competent to conduct her own affairs and that her estate was being depleted. The job description for the attorney, Liles, stated that he was to `prosecute, negotiate and settle all actions of causes or claims concerning (sic) with the interdiction and succession of Grace Sells.' The contingency fee arrangement was embodied in the following language:
`In consideration for such services rendered and to be rendered, client agrees to pay attorney a sum equal to one-fourth of whatever sum she acquires after the date of the execution of this contract, by donation, inheritance, or other means from Grace Sells [sic] estate, whether movable or immovable, tangible or intangible; whether by suit, settlement or any other manner, ...'
The contract went on to provide for a minimum fee to be received by the attorney based upon an hourly amount for work done. The paragraph ends with this sentence:
`Attorney will not receive an ownership interest in any property acquired as set forth above, and will be paid in cash or its equivalent.'
Pursuant to this contract, the attorney filed a petition for the interdiction of Grace Sells. After the death of Grace Sells, the attorney continued to represent the defendant up to the point that the defendant was placed in possession of property from the succession of Grace Sells having a value of $172,746.86.
There is no contention that the lawyer failed to fulfill his duties as contemplated by the parties under the agreement. The defendant accepts, with only slight reluctance, the following assessment of the lawyer's involvement:
a) The contract was executed in good faith.
b) The lawyer's performance was more than acceptable to the defendant.
c) The contingency fee arrangement did not violate the standards of fairness recognized for such arrangements.
*1080 d) The lawyer had no certainty or special knowledge that the estate of Grace Sells would be solvent and would produce anything toward his fee.
It is simply the contention of the defendant that the contract is unenforceable as being prohibited by general and special laws of Louisiana as discussed below.
Contingency fee contracts, now in vogue, are of relatively recent origin and could not have been specifically contemplated by the original redactors of the pertinent codal articles. To determine whether the articles apply to a situation not foreseen at the time of adoption, it is helpful to examine the underlying policy of the rule.
At the time of the execution of the contract, Article 1887 of the Louisiana Civil Code read:
`Future things may be the object of an obligation.
One cannot, however, renounce the succession of an estate not yet devolved, nor can any stipulation be made with regard to such a succession, even with the consent of him whose succession is in question.'[1]
This article was in our Civil Code of 1808, was found in the Code Napoleon and can be traced back to Roman Law. [Planiol, Civil Law Treatise, Vol. 2 Part 1 § 1013, p. 583 (1959).] As pointed out in one case, The Code establishes a public policy prohibiting dealing in the rights whose coming into existence require the death of a living person; three articles of the Civil Code were cited in that connection. Schiffman v. Service Truck Lines, Inc., 308 So.2d 824 (La. App. 4th Cir.1974) La.C.C. Arts. 984, 1976 and 2452 [now Art. 1976 and 2454].

* * *
Planiol says that a motive behind the prohibition was the immorality of parties speculating on the deaths of another, usually a relative; or the danger of non-relatives, having obtained an interest in the death of a living person, considering crime to hasten its commission. Civil Law Treatise, Vol. 2, Sections 10, 12, to 10 through 15, Pages 583 and 584 [1959].
One recent law review writer suggested that the prohibition is there because it is the kind of legal transaction which adversely effects `a matter of public order.'[2]
It was said in the Schiffman case, supra, that agreements dealing in rights to the succession of a living person were:
`... contrary to morals in the sense of Civil Code, Article 1892 and "contra bonos mores (contrary to moral conduct) or to public order" in the sense of Civil Code Article 1895.' (Pg. 826)
In that case, the issue was whether or not the prohibition against the dealing in a succession extended to compromising a death claim before the demise of the injured party. A reading of the opinions of the majority and the dissent demonstrate that there is no disagreement that `dealing in' a succession would be clearly violative of the state's public policy.
The wide effect of the prohibition is accepted by all current commentators on the subject. In the case of Beecher v. United States, 280 F.2d 202 (3rd Cir.1960), a federal tax decision turned on the enforceability of a property settlement agreement wherein the decedent obligated himself to leave each of his two sons one-fourth (¼) of his net estate. A law review writer said, matter of factly:
`However, the Louisiana prohibition against contracts with respect to unopened *1081 successions will probably prevent a Louisiana husband from taking advantage of the Beecher decision.[3]
Also, see the operation of the prohibition in Roy v. Roy, 382 So.2d 253 (La.App. 3rd Cir.1980).
Plaintiff contends that the contingency contract in the present case does not fall into the prohibitions which are discussed above. It is pointed out, for instance, that the contract was to encompass the receipt of funds from the estate of Grace Sells whether they came through way of donation, inheritance, or other means. The agreement does not spell out if the term donation was to include a donation inter vivos and a donation mortis causis [sic]. It, furthermore, does not spell out what `other means' includes. Obviously, Grace Sells could not be made to donate anything to Dorothy Bourgeois and the only right which Dorothy Bourgeois had to any of the property owned by the said Grace Sells was that of a future interest as a descendant of and anticipated heir to Grace Sells. There is no way that the agreement can be read except to conclude that the source of funds which the parties contemplated to provide payment of fees was the succession of Grace Sells. Even if the agreement can be construed to refer to sources other than the future succession of a living person it is irrelevant because the funds received by the defendant did, in fact, devolve through the succession.
Plaintiff, also, contends that the agreement did not grant the attorney any interest in the succession but, rather, simply made reference to an amount which would be received from the estate of Grace Sells. The contention goes on that this reference simply supplied the element in a formula for computing the attorney's fee. This interpretation is reinforced by the sentence from the agreement, specifying that the attorney would not receive an ownership interest but would be paid in cash for its equivalent.
There is no meaningful distinction between receiving a percentage of interest in a succession or an amount of money equal to that same percentage. For example, if an heir-to-be cannot obligate himself to deliver one-half of an anticipated inheritance, then he cannot be obligated to deliver the equivalent in cash of one-half of what he eventually inherits. If allowed, such a simply [sic] circumvention of the prohibition would render it useless.
Plaintiff further argues that the rights of the attorney do not fall into the prohibition against dealing in the succession of a living person because the fee did not come into existence on the death of the living person. That is incorrect. The inheritance received by Dorothy Bourgeois resulted from the death of Grace Sells. No fee was due from the contingency fee part of the contract at the time of the execution of the contract or at any point during plaintiff's employment until the death of Mrs. Sells. If Mrs. Sells had died penniless, the attorney would have only been entitled to his minimum fee.
But, the latter observation in the foregoing paragraph points out that the contingency fee portion of the contract of employment fell squarely into the prohibition of then Article 1887 and the companion articles mentioned. That fee arrangement was dealing in rights whose coming into existence required the death of a living person. If Mrs. Sells were still alive today, then Dorothy Bourgeois would not yet be entitled to anything from her mother's estate and Mr. Liles' rights would not have yet come into existence. He would only be assured the alternate method of fee determination, the hourly rate.
To view the scenario created by this arrangement is to underscore that the situation created is the exact situation which the policies of the code sought to prevent. Mrs. Sells, if interdicted, could not donate any of her estate to Mr. Liles' client; if she was successful in resisting interdiction, then she was free to dispose of her estate however she saw fit. Thus, the situation created by this contract of employment was in clear violation of both the language *1082 and of the underlying policies of the pertinent code articles whether one considers the prohibition to be immoral, dangerous, or just an unwise bargain. The contingent fee contract based upon an interest in a future succession is, therefore, unenforceable.
It does not follow that the attorney is only entitled to the minimum fee arrangement provided for in the contract of employment. Those provisions cannot be read alone. The agreement to accept the minimum amount as an alternate was based upon the chance of receiving a greater amount as a contingency fee. In view of the fact that the contingency fee portion is unenforceable, then the consideration for the balance of the agreement fails and the attorney is not bound by its provisions. In such an event, the recompense of the attorney is figured on the principles of quantum meruit. Kinsey v. Dixon, 467 So.2d 862 (La.App. 2nd Cir.1985), Masinter v. Grunewald, 336 So.2d 876 (La.App. 4th Cir.1976).
Under Louisiana law, `there is a general concept of quasi contractual obligations; it is a consent based upon the principle that where there is an unjust enrichment of one at the expense or impoverishment of another, then the value of that enrichment or else, in some cases, the amount of the impoverishment must be restituted. Planiol, Traite Elementaire De Droit Civil, T.2, No. 812, No. 812, No. 813 (8th ed. 1939).' Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422, 432 (1967).
In establishing an attorney's fee on the basis of quantum meruit the jurisprudence has provided the factors to be considered by the court. A brief summary of the considerations used by this court are:
1) Responsibility incurred.
2) Extent and character of labor performed.
3) Importance of questions presented.
4) Amount involved.
5) Knowledge and ability of counsel.
See Sokol v. Bob McKinnon Chevrolet, Inc., 307 So.2d 404 (La.App. 4th Cir.1975). [See also D.R. 2-106(B) Code of Professional Responsibility] As mentioned earlier, the attorney herein is not bound by the hourly rate of legal services provided for in the contract. In the determination, the judge is entitled to utilize his own knowledge of the value of legal services. Furthermore, the judge need not personally view the work done or in other words, the work need not be performed `under the eye of the court.' James, Robinson, Felts & Starnes v. Powell, 303 So.2d 229 (La.App. 2nd Cir.1974). In view of the total amount of work performed by the attorney herein and of the other considerations listed, an award of $15,000.00 would be deserved and the same is made. The plaintiff is given judgment in that amount plus all costs with interest from date of judicial demand.
A judgment in accordance with these views will be signed upon presentation."
We find that the trial court was correct in finding that the contract between plaintiff and defendant was unenforceable for the reasons given by the trial court. We also find that the amount of plaintiff's award is not manifestly erroneous. During his representation of defendant, plaintiff attorney competently and diligently proceeded with the interdiction of defendant's mother and performed many hours of service representing defendant's interest in her mother's estate. During trial, plaintiff successfully met his burden of proving the value and extent of his services and expenses. See DR 2-106(B), Code of Professional Responsibility; Guillory v. Jim Tatman's Mobile Homes, Inc., 490 So.2d 1185 (La.App. 3 Cir.1986) and Simon, Corne & Block v. Duke, 429 So.2d 507 (La.App. 3 Cir.1983), writ den., 437 So.2d 1147 (La. 1983). Under these circumstances, the trial court's award to plaintiff of $15,000.00 plus legal interest thereon from date of judicial demand is reasonable.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed to the plaintiff-appellant.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Titles III and IV of Book III of the Civil Code of 1870, which formerly contained C.C. arts. 1756 to 2291, were amended and reenacted by Acts 1984, No. 331, to contain C.C. arts. 1756 to 2057, effective January 1, 1985. The subject matter of the above article, C.C. Art. 1887, is now contained in present C.C. art. 1976 which reads:

`Future things may be the object of a contract.
The succession of a living person may not be the object of a contract other than an antenuptial agreement. Such a succession may not be renounced.'
The court is in agreement with the reporter's comment which follows Article 1976 to the effect that the law is not changed. This is particularly true as it applies to the issue at hand.
[2] 41 La. Law Review 1007, 1011. [Cairo, Codification Technique and the Problem of Imperative and Suppletive Laws, 41 La. Law Rev. 1007, 1011 (1980-1981).]
[3] 37 TuLR 42. [Walther and Wittmann, Separation and Divorce in Louisiana: A Tax Analysis, 37 TuLR 42 (1962).]